## S01A0658. MANCILL v. THE STATE.
(554 SE2d 477)

FLETCHER, Chief Justice.

A jury convicted Durwyn Quincy Mancill of the murder of Yolanda Lewis and Ace Johnson, III.[1] Mancill challenges the trial court's evidentiary rulings concerning two videotaped interviews of a child who testified as a witness at the trial. Because we conclude that the trial court did not abuse its discretion in admitting the videotaped interviews as prior consistent statements or in prohibiting the defendant's expert from evaluating the techniques used in questioning the child, we affirm.

1. The evidence presented at trial shows that residents in Lewis's apartment complex heard gunshots before daybreak on August 5, 1992, and saw four-year-old Kendra Lewis run down the front steps of her apartment building. She ran to three people on the street and told them that "Dre had just shot her mama's eye out." When police arrived, they kicked open the front door, which was locked, and found Johnson lying behind the front door and Kendra's mother lying on the bed in the front bedroom. Each victim had been shot twice in the head with the same gun. The lights were on in the apartment and the back door was standing open. While waiting for her relatives to arrive, Kendra told a police officer that her mother's friend Dre "shot my mama" and then said, "There go Dre," pointing to Mancill as he was walking down the street with his friends.

At trial, Kendra testified in a conference room in the presence of the defendant, who was seated behind her, and the jury, judge, and attorneys. She said that "Andre" killed her mother with a big gun,

---

[1] The shooting occurred on August 5, 1992. Mancill was indicted on November 10, 1992. A jury found him guilty on April 9, 1993, and the trial court sentenced him to concurrent sentences of life imprisonment on April 16, 1993. Mancill filed a motion for a new trial on April 21, 1993, and a hearing was held on February 29, 1996, but the trial court recused itself from the case before ruling. Another trial court held a hearing on September 1, 2000, and denied the motion on October 18, 2000. Mancill filed a notice of appeal on October 20, 2000. The case was docketed in this Court on January 24, 2001, and submitted for decision without oral arguments on March 19, 2001.

hurting her in the head, and she saw Johnson killed "on the front door" when she ran out. She pointed out "Andre" from a police photo lineup of six men, including two of the other suspects, and identified the defendant as "Andre" when she was turned around to face him. She was not able to identify another suspect who was brought into the conference room during her testimony.

Other witnesses testified that Yolanda Lewis had dated Mancill, who was also known as Deandre Jones, in May and June of that year. Testifying in his own defense, Mancill said that he was sleeping with friends in the living room of an apartment in a different building when the shootings occurred. Mancill's defense was that another man named Dre, either one of Johnson's associates or Lewis's former boyfriend, committed the murders. After reviewing the evidence in the light most favorable to the jury's determination of guilt, we conclude that a rational trier of fact could have found Mancill guilty of the crimes charged.[2]

2. A witness's prior consistent statement is admissible at trial when the veracity of the witness's trial testimony has been placed in issue, the witness is present at trial, and the witness is available for cross-examination.[3] A witness's veracity is placed in issue if "affirmative charges of recent fabrication, improper influence, or improper motive are raised during cross-examination."[4] We have previously held that a videotaped interview of a four-year-old witness taken shortly after his mother's murder is admissible as a prior consistent statement to rebut contentions that the child's father had influenced the child's testimony at trial.[5] Similarly, we conclude that the two videotaped interviews of Kendra Lewis, which are consistent with her trial testimony, were admissible because Mancill contended that her relatives and others attempted to influence her identification of him as the person who shot Yolanda Lewis.

3. In *Barlow v. State*,[6] we held that a defendant in a child molestation case may "introduce expert testimony for the limited purpose of providing the jury with information about proper techniques for interviewing children and whether the interviewing techniques actually utilized were proper."[7] Mancill contends that we should apply the same holding to his case because the propriety of the techniques

---

[2] See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] See *Woodard v. State*, 269 Ga. 317, 320 (496 SE2d 896) (1998).

[4] Id.

[5] See *Norton v. State*, 263 Ga. 448 (435 SE2d 30) (1993).

[6] 270 Ga. 54 (507 SE2d 416) (1998).

[7] See generally Brent G. Filbert, Annotation, *Admissibility of Expert Testimony as to Proper Techniques for Interviewing Children or Evaluating Techniques Employed in Particular Case*, 87 A.L.R. 5th 693 (2001) (discussing sexual abuse cases involving child victims where the issue "usually arises").

actually used in interviewing the child witness was a central issue at trial.

Based on the record presented, we decline to extend our ruling on the admissibility of expert testimony concerning the questioning of a child victim in a sexual abuse case to the questioning of the child witness in this murder case. Initially, we note that Mancill did not present a proffer at trial or at either of the two hearings on his motion for new trial concerning the expert testimony that he hoped to elicit. Without the proffer, it is impossible to know whether his expert would have been critical of the techniques used by the social worker who interviewed the witness on the videotape. In addition, the jury was able to view both of the videotaped interviews and could determine for itself whether the interviewer attempted to influence the witness by suggestive questions, as the defendant contended. A review of the first videotape shows that Kendra volunteered that "my mama got killed" and "Andre got killed her" in response to a preliminary question about who brought her to the interview. Moreover, police did not have to conduct a special interview of Kendra to elicit the identity of the shooter. She had identified "Dre" as the shooter to bystanders immediately after the murders and pointed out Mancill to police as he walked down the street that morning. Assuming the trial court erred in refusing to allow the defendant to elicit testimony from his own expert about the actual techniques used in interviewing the four-year-old child witness, the error was harmless because the defendant was able to present his own expert testimony concerning the proper techniques to use in questioning children and conducted an exhaustive cross-examination of the state's expert, comparing the preferred practice with each question she asked Kendra during the interviews.

4. Concerning the remaining enumerations, we conclude that the trial court did not abuse its discretion in limiting questions during voir dire about the veracity of children and white police officers,[8] denying the defendant's motion to dismiss the jury panel based on a juror's comment on his previous jury experience,[9] and prohibiting testimony about a prior fight between Yolanda Lewis and a former boyfriend to show motive when there was no evidence linking that boyfriend to the murder.[10] In addition, the trial court correctly declined to give two requested charges on the credibility of witnesses since the pattern charge substantially covered the same issue.

*Judgment affirmed. All the Justices concur.*

---

[8] See *Gissendaner v. State*, 272 Ga. 704 (532 SE2d 677) (2000).
[9] See *Roberts v. State*, 259 Ga. 441 (383 SE2d 872) (1989).
[10] See *Klinect v. State*, 269 Ga. 570 (501 SE2d 810) (1999).

DECIDED NOVEMBER 5, 2001.

*Steven E. Phillips*, for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, C. Michael Quinn, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Mary Beth Westmoreland, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Tammie J. Philbrick, Assistant Attorney General*, for appellee.