## S05A1862. CHATMAN v. MANCILL.

(626 SE2d 102)

HUNSTEIN, Presiding Justice.

Durwyn Mancill was granted habeas corpus relief after the habeas court found that Mancill's due process rights were violated by the delay between his 1993 convictions and the 2001 affirmance of those convictions by this Court. Based on our review of the record and the habeas court's findings of fact and conclusions of law, we hold that the habeas court erred in its ruling and accordingly reverse.

Mancill was indicted in November 1992 on charges that he murdered Yolanda Lewis and Ace Johnson III. Counsel from the Fulton County Public Defenders Office (FCPDO) were appointed to represent him. After a trial lasting two and one-half weeks, he was convicted of both murders and the trial court on April 19, 1993 imposed two life sentences. Rather than filing a notice of appeal, he chose instead to seek a new trial and trial counsel timely filed a motion for new trial pursuant to OCGA § 5-5-40 (a). It took the court reporter 17 months to complete and file the eight-volume transcript of Mancill's trial. Mancill's motion for new trial, as amended by Mancill's new appellate counsel, FCPDO attorney William T. Hankins III, was heard in February 1996. However, the trial judge recused herself a month later, apparently because of a conflict created by trial counsel's decision to run as a candidate for the judge's seat. Within two months of her recusal, Hankins filed a second amendment to the motion for new trial. See OCGA § 5-5-40 (b) (motion for new trial may be amended any time on or before the ruling thereon). The record reflects that over the course of the next four and one-half years, Mancill's appellate counsel (first Hankins and then FCPDO attorney Shannon Neal Weathers) filed three more amendments to the motion for new trial, each amendment raising new claims, such as newly discovered evidence and error by the trial court in holding approximately 100 unrecorded, untranscribed bench conferences.

A second hearing on the motion as amended was held in September 2000. Appellate counsel Weathers presented no evidence at the hearing to support the claim that Mancill was prejudiced by the unrecorded bench conferences. See *Sinns v. State*, 248 Ga. 385 (2) (283 SE2d 479) (1981) (court's failure to order recordation of bench conferences is not error absent some prejudice to defendant). Instead, after consulting with Steven Phillips, a senior staff attorney at FCPDO, counsel filed a motion to correct and complete the transcript. The motion was granted and an order subsequently extended the time for the parties to confer after Weathers was replaced by FCPDO attorney J. Jeffrey Lacy. On October 18, 2000, eleven days after granting the extension, the trial court signed an order denying the

motion for new trial and holding that the motion to correct the transcript had been "abandoned."

Counsel filed a timely notice of appeal on October 20, 2000, seven and one-half years after the date of Mancill's conviction. The case was docketed in this Court on January 24, 2001, at which point FCPDO attorney Phillips replaced Lacy and presented the appeal. Phillips also filed a motion in this Court to have the case remanded to the trial court so that he could withdraw and counsel not affiliated with the FCPDO be appointed to pursue claims against Mancill's trial and post-trial attorneys. This Court denied the motion and affirmed Mancill's conviction in *Mancill v. State*, 274 Ga. 465 (554 SE2d 477), rendered November 5, 2001, within the two-term time frame mandated by our State Constitution. Art. VI, Sec. IX, Par. II, Ga. Const. of 1983.

Mancill filed a petition for writ of habeas corpus in October 2002. The matter came on for a hearing in May 2003, at which time Mancill presented the testimony only of his trial counsel and his last FCPDO appellate counsel, Phillips. The habeas court granted Mancill relief but on appeal this Court remanded the case for the habeas court to determine, inter alia, whether cause and prejudice existed under OCGA § 9-14-48 (d) to excuse Mancill's failure to enumerate the delay issue as an error in his direct appeal. *Chatman v. Mancill*, 278 Ga. 488 (604 SE2d 154) (2004). On remand, the habeas court found both cause and prejudice existed to excuse the procedural default[1] and again granted Mancill relief, prompting this second appeal by Warden Chatman.

1. Warden Chatman contends the trial court erred by finding that cause existed to excuse Mancill's procedural default. To establish the "cause" element of the exception to procedural default, Mancill was required to demonstrate that " 'some objective factor external to the defense impeded counsel's efforts' to raise the claim that has been procedurally defaulted." (Footnote omitted.) *Turpin v. Todd*, 268 Ga. 820, 825 (2) (a) (493 SE2d 900) (1997). The habeas court reasoned that Phillips could not have asserted in this Court the issue of the delay in the post-trial handling of Mancill's appeal because of "the same policy reason" behind this Court's opinion in *Ryan v. Thomas*, 261 Ga. 661 (409 SE2d 507) (1991). In *Ryan*, we recognized that one member of a public defender's office could not reasonably be expected to assert or argue the ineffective assistance of a fellow member from the same office. Id. at 662. The habeas court reasoned that Phillips operated

---

[1] The habeas court, pursuant to this Court's opinion, also analyzed Mancill's case under the "miscarriage of justice" test but expressly found that Mancill could not satisfy that test.

under a *Ryan* conflict that prevented him from raising the delay issue because the delay was caused by the ineffectiveness of his fellow FCPDO counsel.

It is well established that "[c]ounsel prosecuting an ineffective assistance claim must be free to operate independently of the attorney whose performance is in question. [Cits.]" *Davis v. Turpin*, 273 Ga. 244, 248 (3) (b) (539 SE2d 129) (2000). The habeas court, however, overlooked the crucial fact, established by Phillips' testimony, that all of Mancill's prior FCPDO appellate counsel had left the office by the time Phillips was appointed to represent Mancill.[2] The rationale in *Ryan* was not applicable to Mancill's post-trial counsel who were no longer members of the FCPDO.[3] "Since they were no longer practicing together, the conflict that arose in [*Ryan*], supra, was not present in this case." *Glick v. Arkansas*, 566 SW2d 728, 729 (Ark. 1978). See also *Illinois v. Walton*, 399 NE2d 588 (Ill. 1979) (the "natural inclination" of members of the same public defender's office to insulate the office against charges of incompetency not applicable where attorney had departed the office). See also *Boyette v. State*, 217 Ga. App. 593 (1) (458 SE2d 397) (1995) (affirming denial of defendant's request for counsel from outside public defender's office because attorney who represented defendant at time of conviction was no longer employed by that public defender's office at time defendant challenged his conviction). But see *Pennsylvania v. Delker*, 452 A2d 766 (Pa. Super. 1982) (finding conflict continued to exist even where attorney whose performance was in issue had voluntarily retired from public defender's office six years prior to proceeding challenging his effectiveness). Accordingly, the habeas court erred by applying the legal rationale in *Ryan*, supra, to provide the cause to excuse Mancill's procedural default.[4]

---

[2] Although at least one of Mancill's trial counsel was still with the FCPDO at the time Phillips handled the appeal, Mancill does not claim trial counsel were involved in or otherwise responsible for the post-conviction delay.

[3] We do not address whether *Ryan* applies where the attorney alleged to have rendered ineffective assistance was a former member of counsel's law firm.

[4] Phillips also did not enumerate as error on direct appeal the trial court's failure to record the bench conferences, although that claim had been raised by appellate counsel Weathers in an amendment to Mancill's motion for new trial. As noted earlier, no evidence was presented by Weathers at the second hearing on Mancill's motion to establish the requisite prejudice to render the failure to record the bench conferences reversible error. See generally *Sinns*, supra, 248 Ga. 385. Even if Weathers' resignation from the FCPDO would otherwise have freed Phillips to raise a claim of ineffectiveness by Weathers in this regard on appeal, Mancill established cause to justify Phillips' failure to raise the issue with the introduction of Phillips' testimony at the habeas hearing that Phillips personally had provided legal advice to Weathers on how to handle the unrecorded bench conference issue. However, based upon our review of the transcript, see Division 2 (e), infra, Mancill was not prejudiced by any deficiency in counsel's performance in regard to the failure to raise the unrecorded bench conference issue on appeal.

2. However, even assuming, arguendo, that cause was shown for Mancill's procedural default, we agree with Warden Chatman that the habeas court erred when it concluded that Mancill had also established prejudice. The habeas court was required to determine whether Mancill had shown actual prejudice resulting from the alleged error, *Turpin v. Todd*, supra, 268 Ga. at 828 (2) (b), i.e., that the delay in the handling of Mancill's appeal worked to his actual and substantial disadvantage. "The prejudice sufficient to satisfy the cause and prejudice test is a prejudice of constitutional dimensions. [Cit.]" *Waldrip v. Head*, 279 Ga. 826, 832 (II) (H) (620 SE2d 829) (2005).

The habeas court determined that Mancill had suffered a due process violation as a result of delay caused by the ineffective assistance of his appellate counsel and that Mancill was actually prejudiced as a result of the delay, specifically, by the lost opportunity to recreate the unrecorded bench conferences and by the general inadequacy of the appeal submitted to this Court by Phillips on Mancill's behalf. The evidence in this case, however, fails to support the habeas court's underlying premise, namely, that Mancill suffered a due process violation because of delay.

(a) Georgia, like every other state and the Federal government, provides some means of appellate review for defendants in criminal cases. See 5 LaFave, Israel and King, Criminal Procedure § 27.1 (a), p. 863 (2d ed. 1999). This Court has recognized that substantial delays experienced during the criminal appellate process implicate due process rights. See *Chatman v. Mancill*, supra, 278 Ga. at 488, n. 2; *Walker v. State*, 247 Ga. 484 (277 SE2d 242) (1981). Accord *Douglas v. California*, 372 U. S. 353 (83 SC 814, 9 LE2d 811) (1963) and *Griffin v. Illinois*, 351 U. S. 12, 18 (76 SC 585, 100 LE 891) (1956) (when a state provides a right to appeal, it must meet the requirements of due process and equal protection). While this Court has considered post-conviction due process claims based on delay in filing a transcript, see *Glenn v. State*, 279 Ga. 277 (3) (612 SE2d 478) (2005), we have not previously addressed how to resolve claims asserting due process violations based on inordinate appellate delay.

Our review of case law reveals that courts basically have taken one of two approaches. The first utilizes an analysis based on the four speedy trial factors set forth in *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972), which are "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Id. at 530. E.g., *United States v. Smith*, 94 F3d 204 (II) (6th Cir. 1996); *Simmons v. Reynolds*, 898 F2d 865 (II) (A) (2nd Cir. 1990); *Burkett v. Cunningham*, 826 F2d 1208 (IV) (B) (3rd Cir. 1987). The second approach rejects the *Barker* approach on the basis that it is derived from the Sixth Amendment and instead focuses solely on

questions of fairness and prejudice. E.g., *Lopez v. Nevada*, 769 P2d 1276 (II) (B) (2) (Nev. 1989); *Arizona v. Chapple*, 660 P2d 1208, 1225 (Ariz. 1983); *United States v. Alston*, 412 A2d 351 (II) (D.C. 1980). Both of these approaches have been criticized. Arkin, Speedy Criminal Appeal: A Right Without A Remedy, 74 Minn. L. Rev. 437 (1990). While we agree with the courts applying the second approach that speedy appeal claims[5] arise under the Fifth Amendment and that many of the interests protected by the Sixth Amendment are not implicated in the context of an appellate proceeding where the defendant has already been convicted of an offense, we conclude that the analytical framework created by the *Barker* factors provides a familiar, thorough and practical means of assessing the fairness and prejudice issues that arise in cases involving the delayed resolution of direct appeals from judgments entered on criminal convictions in which the death penalty was not imposed.

> Although the interests at stake before trial and before appeal obviously differ, they are sufficiently similar to warrant the same general approach. See *Moore v. Arizona*, 414 U. S. 25, 27, 94 S. Ct. 188, 190, 38 L. Ed. 2d 183 (1973) (*Barker* factors may carry "different weight where a defendant is incarcerated after conviction"); *Cody* [*v. Henderson*], 936 F.2d [715, 719 (2nd Cir. 1991)] ("*Barker* factors should not be applied uncritically" in speedy appeal context).

*Simmons v. Beyer*, 44 F3d 1160, 1169 (3rd Cir. 1995). We accordingly follow the majority position and adopt the analytical framework formulated in *Barker*, supra, see *Daniel v. Wyoming*, 78 P3d 205, 219 (Wy. 2003), and apply it to our review of the evidence established by the record in this case.

(b) "[T]he length of delay that will provoke [a constitutional] inquiry is necessarily dependent upon the peculiar circumstances of the case." *Barker*, supra, 407 U. S. at 530-531. Although " 'not every delay in the appeal of a case, even an inordinate one,' implicates an appellant's due process rights, [cit.]" *United States v. Mohawk*, 20 F3d 1480, 1485 (III) (9th Cir. 1994), in this case we accept the habeas court's finding that the delay alleged here was excessive because that finding is supported by some evidence. See generally *Walker v.*

---

[5] We recognize that it may be misleading to denominate Mancill's due process claim as a "speedy appeal" violation, especially given how expeditiously his actual appeal was handled, with his case docketed in this Court within three months of the filing of his notice of appeal and his convictions affirmed by opinion rendered within the two-term deadline mandated by our State constitution. We use "speedy appeal" as a convenient label to encompass all claims of inordinate delay that impair a defendant's right of access to the courts in post-conviction proceedings arising out of the direct appeal of non-capital cases.

*Houston*, 277 Ga. 470 (1) (588 SE2d 715) (2003) (appellate court affirms habeas court's ruling unless its factual findings are clearly erroneous or are legally insufficient).

(c) As for the second *Barker* factor, the habeas court found that the reason for the delay was primarily the cumulative ineffective assistance of Mancill's appellate counsel.[6] While the record supports the finding that appellate counsel were responsible for the delay, it fails to show that ineffectiveness by appellate counsel was the reason for the delay. The habeas court accordingly erred by so finding.

At the habeas hearing Mancill introduced only the testimony of his trial counsel and his last FCPDO appellate counsel, Phillips. Mancill did not call Hankins and Weathers, his counsel for virtually all of the post-conviction time period, to testify regarding their handling of his appeal nor did he call any witness from FCPDO with personal knowledge as to their assignment to Mancill's case, the actions they undertook on his behalf, their caseloads and other responsibilities, or similar, pertinent evidence. The transcript does reflect that the habeas judge questioned Phillips about Mancill's prior appellate counsel. However, Phillips' responses were based exclusively on "a sort of a pattern" he had observed in the FCPDO; he could only speculate that because Mancill's prior appellate counsel were trial lawyers, they would have given priority to their trial caseload and put their post-conviction cases "on the back burner." This speculative testimony was not based on personal knowledge and as hearsay lacked any probative value. See generally *Roebuck v. State*, 277 Ga. 200, 204 (1) (586 SE2d 651) (2003).

In the absence of testimony to the contrary, counsel's actions are presumed to be strategic, *Green v. State*, 274 Ga. 686 (3) (558 SE2d 707) (2002), and strongly presumed to fall within the wide range of reasonable professional assistance. *Russell v. State*, 269 Ga. 511 (1) (501 SE2d 206) (1998). It is extremely difficult to overcome this presumption where counsel does not testify. *Morgan v. State*, 275 Ga. 222 (10) (564 SE2d 192) (2002). Instead of adducing the testimony of his prior appellate counsel, Mancill chose to rely solely

---

[6] Although the habeas court at one point in its order found that the delay was "compounded by the effects of recusal of the trial judge," the record reflects that the original trial judge, Josephine Holmes Cook, recused herself 18 days after the first hearing on Mancill's motion for new trial. No reason was given by the trial judge for her decision, although trial counsel testified that the recusal was due to the conflict created by counsel's decision to run as a candidate for the judicial seat held by the trial judge. The record then reflects that the next judge assigned the case, Alford Dempsey, recused himself without explanation five months thereafter. Other than Mancill's motion to show cause, in which he inquired as to the reasons why Judge Don Langham had made no progress with his case, nothing in the record explains when the matter was assigned to Judge Mel Westmoreland, who presided over the second hearing and subsequently ruled on Mancill's motion for new trial.

on the record from the trial court showing what and when documents were filed in that court. Although the record does reflect substantial time gaps between filings, Mancill produced no evidence to overcome the presumption that counsel had reasonable strategic explanations for these gaps, such as the investigation of legitimate leads that subsequently failed to materialize, pending appellate resolution of pertinent legal issues that might have benefitted Mancill's appeal[7] or any number of other professionally competent reasons, including the possibility that counsel, after reviewing the transcript and observing the 100-plus unrecorded discussions reflected therein, deliberately chose not to move the appeal forward in order to pursue a strategy of using the time lapse to excuse the defense's inability to prove the requisite prejudice from the trial court's failure to record the bench conferences. See generally *Sinns*, supra, 248 Ga. at 386 (2).

In light of Mancill's failure to prove that ineffectiveness by his appellate counsel was the reason for the delay, we need not reach the issue of whether failures by court-appointed counsel are attributable to the State. See, e.g., *Simmons v. Beyer*, supra, 44 F3d at 1170. See also *Muwwakkil v. Hoke*, 968 F2d 284, 285 (2nd Cir. 1992) (faulting state for failing both to supervise appointed counsel and monitor its calendar).

(d) As to the third *Barker* factor, the record reflects that Mancill took some steps to obtain a swifter resolution of his appeal and asserted that the delay violated his due process rights.[8]

(e) The final *Barker* factor is prejudice to the defense. Some courts have trifurcated this part of the *Barker* analysis in the context of speedy appeal cases into three considerations: " '(1) prevention of oppressive incarceration pending appeal; (2) minimization of anxiety and concern of those convicted awaiting the outcome of their appeals; and (3) limitation of the possibility that a convicted person's grounds for appeal, and his or her defenses in case of reversal and retrial,

---

[7] See, e.g., *United States v. Smith*, supra, 94 F3d at 209 (IV) (B) ("unassailable reason" for delay when matter deferred for pending authoritative decision).

[8] The record shows that Mancill submitted a pro se "motion to show cause" in May 1997 to compel the superior court clerk to explain why there had been no ruling on his motion for new trial. Mancill asserted therein that "[a]s a result of the court's failure to proceed the defendant is being denied his due process to file appeal or seek other remedies that may [be] available to him as a matter of fact and as of law" and requested that the matter be brought to the attention of the court's presiding judge. In January 1999 Mancill filed a second pro se "motion to show cause" seeking explanations for the recusals of the trial judge and next assigned judge, inquiring why no progress had been made, and claiming his due process and access to court rights were being violated. The final document in the record is Mancill's letter, filed two days after the trial court denied Mancill's motion for new trial, asking if a ruling had yet been rendered. Additionally, Mancill testified that he "wrote several letters to whoever was handling my case at that time and, you know, with no response" and also wrote to the State Bar "trying to get them to get the attorney to . . . step up, still with no response."

might be impaired.' [Cit.]" *United States v. Smith,* supra, 94 F3d at 211 (IV) (D). We agree with those courts recognizing that the first two considerations cannot serve as independent grounds to establish the prejudice required under the modified fourth *Barker* factor. "Incarceration is not 'oppressive' and thus does not support a claim of prejudice under *Barker,* if the absence of a meritorious appeal establishes that the defendant is rightfully incarcerated. [Cit.]" *Daniel v. Wyoming,* supra, 78 P3d at 220. Likewise, "[a]nxiety, even when unconstitutionally inflicted, is harm of a personal nature. It is redressed more appropriately, if at all, under 42 U.S.C. § 1983 or under state law." *Diaz v. Henderson,* 905 F2d 652, 654 (2nd Cir. 1990).[9] Accordingly, we conclude that the prejudice necessary to establish a due process violation based on post-conviction direct appeal delay is prejudice to the ability of the defendant to assert his arguments on appeal and, should it be established that the appeal was prejudiced, whether the delay prejudiced the defendant's defenses in the event of retrial or resentencing.[10] *United States v. Smith,* supra. See also *Glenn,* supra, 279 Ga. at 279 (3). In assessing prejudice, we agree with *Mathis v. Hood,* 937 F2d 790, 794 (2nd Cir. 1991) that the appropriate test is one

> "akin to the second prong of *Strickland[ v. Washington,* 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984)]: appellate delay is prejudicial when there is a reasonable probability that, but for the delay, the result of the appeal would have been

---

[9] We agree with the statement in *Allen v. Duckworth,* 6 F3d 458, 460 (7th Cir. 1993): Habeas corpus is not a compensatory remedy. The object is not to make whole someone who has suffered a loss; it is to determine whether a person is being confined in violation of basic norms of legality. It is conceivable that delay in processing an imprisoned defendant's appeal might make his continued imprisonment unlawful, but once the delay ends with an appellate decision not [established] to be invalid by reason of delay . . . , any ground for ordering him released evaporates. The petitioner was duly convicted, and the conviction upheld, if belatedly, in an appellate decision not . . . infected by any error that would justify his release on habeas corpus. He should serve his time. Any harm is collateral, and is redressable, in principle at least, by a civil rights suit for damages. At bottom what the petitioner is complaining about are the conditions under which he was imprisoned while awaiting the decision of his appeal, and challenges to the conditions in which a convicted defendant is confined are litigated as civil rights suits charging cruel and unusual punishment, and not under the habeas corpus jurisdiction. [Cits.]

[10] We acknowledge the criticism that while prejudice may be relevant to the court's selection of a remedy for a due process violation, it is not requisite to a finding of a violation. Arkin, supra, 74 Minn. L. Rev. at 477. Some courts have found due process violations without a showing that delay prejudiced the assessment of the petitioner's appeal, but then used that same lack of prejudice to deny the petitioner relief for the violation. E.g., *Cody v. Henderson,* supra, 936 F2d 715. We decline to follow such cases.

different. A reasonable probability 'is a probability sufficient to undermine confidence in the outcome.' " [Cit.]

Turning to the prejudice alleged in this case, the habeas court found that the delay prejudiced Mancill because the delay caused Mancill to "lose the opportunity" to recreate the trial transcript.[11] The evidence upon which the habeas court relied was the testimony by Mancill's trial counsel that the delay "made it very difficult" to recall what had been discussed at the bench conferences; her acknowledgment that she could not recall "any of the specifics" of the unrecorded conferences; and that because of the delay she "probably [could] not" have assisted in the recreation of the bench conferences, had she been asked to do so by Phillips. However, trial counsel also testified that while her memory would not have helped her years after a trial, she was "pretty good about taking notes and I kept a running pad, daily pad about things and I would probably have noted things." She then acknowledged that she "could still refer to those notes" if Phillips had come to her.

It does not appear that trial counsel reviewed any part of the trial transcript before testifying. No steps were taken during her questioning to help her refresh her recollection and she was not questioned regarding any particular unrecorded discussion. Most pertinently, she was not asked about the statement made on the record by the trial judge following one of the unrecorded bench conferences that the judge "always ask[ed] you all if you want [a contested matter] on the record" before proceeding with the trial. Furthermore, despite trial counsel's revelation regarding the detailed trial notes she kept, she was not questioned whether those notes were still available for Mancill's trial and whether, if available, they could refresh her recollection as to what occurred during the bench conferences.

We need not determine whether, in light of these gaping flaws in the testimony elicited from trial counsel, the evidence was sufficient to support the habeas court's finding that Mancill "lost the opportunity" to recreate the unrecorded bench conferences. That is because we have conducted a second review of the trial transcript and our scrutiny establishes that Mancill cannot prove he was prejudiced by the trial court's failure to record the bench conferences.

---

[11] This finding, although made in this appeal in the context of the "cause and prejudice" test to excuse Mancill's failure to raise the delay on appeal, also served as the basis for the habeas court's initial finding that the delay violated Mancill's due process rights.

The eight-volume transcript reflects that over the course of the two and one-half week trial, numerous unrecorded discussions occurred, beginning with voir dire and continuing through the arrangements for the jury to view the crime scene during a pause in deliberations. Contrary to the finding by the habeas court that "[a]lmost every critical legal issue that was raised at trial was obscured by the silence of the record," our review of the transcript as a whole, as well as the 100 specific instances in the transcript cited by Mancill in his fourth amendment to his motion for new trial, reveals the following: in approximately half of the cited instances the trial court's ruling was either subsequently clarified for the record or was obvious from the context of the discussion and the subsequent questioning by counsel; in nearly 40 other instances the bench conferences obviously involved issues of scheduling, breaks in the proceedings, juror placement issues, the order in which witnesses were presented, locating and identifying evidence or other routine court procedures; that several bench conferences clearly involved direction by the trial court to counsel regarding the manner in which they were expected to conduct themselves in the courtroom, in response to the considerable amount of bickering between the prosecution and the defense; and in the handful of remaining instances either the lack of recordation was expressly waived by the defense or else the bench conferences involved matters that had no discernible impact on the manner in which counsel conducted Mancill's defense at trial.

A petitioner is entitled to a habeas determination of whether the delay rendered his appeal nothing "more than a 'meaningless ritual.' " *Evitts v. Lucey*, 469 U. S. 387, 394 (II) (A) (105 SC 830, 83 LE2d 821) (1985). Our reading of the transcript clearly establishes that while reading the transcript was comparatively burdensome, it was not so inaccurate or incomplete as to prevent this Court from reviewing it for errors in Mancill's trial and thus did not preclude meaningful review of Mancill's direct appeal. Accord *North Carolina v. Hammonds*, 541 SE2d 166 (II) (N.C. App. 2000) (imperfections in transcript did not render it so inaccurate as to prevent meaningful review by appellate court). It follows that even had Mancill obtained appellate counsel unburdened by any conflict of loyalties and thus able to raise before this Court the unrecorded bench conference issue, as compounded by and together with the delayed post-conviction proceedings issue, there is no reasonable probability that the result of his appeal would have been any different. See also *Capps v. Cowley*, 63 F3d 982 (I) (10th Cir. 1995) (bare assertion that 140 pages of trial transcript lost or deleted failed to establish prejudice where petitioner showed neither that missing pages were material nor that they could not be retrieved from other sources); *United States v. Renton*, 700 F2d 154, 158-159 (5th Cir. 1983) (incomplete transcript coupled

with lengthy delay in the review process does not ipso facto render review a nullity where opportunity is given the appellant to fill in the gaps in the record and appellant, relying only on vague allegations of prejudice, fails to indicate one specific error committed during the portions of trial not included in the record). Accordingly, the habeas court erred when it found that Mancill carried his burden of showing that delay prejudiced his appeal.[12]

(f) Balancing the modified *Barker* factors in light of our discussion above, we conclude that the habeas court erred when it found that Mancill's due process rights were violated by the delay in his post-conviction direct appeal. The habeas court's grant of Mancill's petition for writ of habeas corpus is reversed.[13]

*Judgment reversed. All the Justices concur.*

DECIDED JANUARY 30, 2006 —
RECONSIDERATION DENIED FEBRUARY 27, 2006.

*Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellant.
*Thompson & Sweeny, Stephen D. Pereira*, for appellee.

---

[12] Because the delay did not prevent Mancill from presenting an adequate appeal to this Court, any concerns regarding the effect of delay upon retrial are mooted, *Harris v. Champion*, 15 F3d 1538, 1564 (10th Cir. 1994) ("[t]hat delay has impaired a petitioner's ability to mount a defense on retrial is irrelevant . . . if a petitioner has no credible grounds for reversal and retrial"), and thus we do not have to address the applicability of the holding in *Doggett v. United States*, 505 U. S. 647, 655 (112 SC 2686, 120 LE2d 520) (1992) ("excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or . . . identify"). Compare *United States v. Mohawk*, supra, 20 F3d at 1487-1488 (*Doggett* presumption not applicable) with *United States v. Smith*, supra, 94 F3d at 211-212 (*Doggett* presumption applicable).

[13] To the extent that the habeas court's second finding of prejudice under the cause and prejudice test can be applied to provide the prejudice under the fourth modified *Barker* factor, that second finding is also not supported by the record. The habeas court found that the delay caused the "general inadequacy" of the appeal submitted by Phillips on Mancill's behalf. However, the habeas court specifically found that Phillips was "commendably dedicated and zealous in trying to present the strongest appeal for [Mancill] that he could" and no evidence was adduced that in selecting the issues to be raised before this Court, Phillips either passed over stronger issues in favor of raising weaker ones, see *Battles v. Chapman*, 269 Ga. 702, 704 (1) (506 SE2d 838) (1998), or made any unreasonable tactical decisions that only an incompetent attorney would have adopted. See *Shorter v. Waters*, 275 Ga. 581, 584 (571 SE2d 373) (2002). The habeas court's ruling was thus in error.