CRAWFORD, Judge
(concurring in part and dissenting in part):
I respectfully dissent because the majority: (1) usurps the role of Congress and the President, as delegated by Congress to the executive branch by Article 36, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 836 (2000), by establishing prospective rules setting forth timelines for the post-trial processing of cases in the military justice system; and (2) misapplies the speedy trial balancing factors of Barker v. Wingo, 407 U.S. 514, 529-33, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).
I agree with the majority that the military judge should have granted the challenge for cause, and thus concur in the result.
I. Separation of Powers
A. History
The wisdom of our Founding Fathers is reflected in the process and procedures they established in the Constitution. To prevent centralization of power, the Founding Fathers established three branches of government, each with its own rules, powers, and responsibility, and serving as a check on each other rather than one exercising the role of two branches of government. As James Madison said, “There can be no liberty ... if the power of judging be not separated from the legislative and executive powers.” The Federalist No. Jp7, at 302 (James Madison) (Clinton Rossiter ed., 1961). Accordingly, Madison cited the “oracle” Montesquieu for the admonition of our Founding Fathers that the “preservation of liberty requires that the three great departments of power should be separate and distinct.” Id. No. Jp7, at 301 (James Madison). In separating the powers of the departments of the federal government, the Founding Fathers established a system of checks and balances “by so contriving the interior structure of the government as that its several constituent parts may, by their mutual relations, be the means of keeping each other in their proper places.” Id. No. 51, at 320 (James Madison).
B. Congressional Delegation
Under Article 36, UCMJ, Congress has delegated to the President the power to prescribe rules for post-trial procedures. By establishing prospective rules setting forth timelines for post-trial processing, the majority assumes the role delegated to the President by Congress in Article 36, UCMJ, in contravention of the constitutional separation of powers doctrine.
In Barker v. Wingo, the Supreme Court rejected judicial rulemaking to specify a time period for when a defendant will be offered a trial. 407 U.S. at 523, 92 S.Ct. 2182. The Court concluded that setting out a time period to identify when the speedy trial right has been infringed would require the Court “to engage in legislative or rulemaking activity, rather than in the adjudicative process to which [the Court] should confine [its] efforts.” Barker, 407 U.S. at 523, 92 S.Ct. 2182. The Court reasoned its “approach must be less precise” and that it should not establish procedural rules because there is “no constitutional basis for holding that the speedy trial right can be quantified into a specified number of days or months.” Id. In creating specific timelines that, if violated, equate to unreasonable delay, the majority is essentially modifying the Rules for Courts-Martial (R.C.M.) and attempting to assume the role of the President in violation of separation of powers principles.
II. Post-Trial Delay
A. General
While the Supreme Court has not addressed the issue of whether the Constitution guarantees a right to a speedy appeal, the lower federal courts and this Court have. “The speedy trial guarantee of the Sixth Amendment applies only to proceedings in the trial court. Our sister circuits have held, however, that a similar guarantee applies to criminal appeals via the Due Process *145 Clause.” United States v. Smith, 94 F.3d 204, 206 (6th Cir.1996) (citations omitted). The right to a speedy trial is guaranteed an accused by the Sixth Amendment. The Due Process Clause provides that “No person shall ... be deprived of life, liberty, or property, without due process of law----” U.S. Const, amend. V. An appellant’s right to a speedy appellate review evolves from an appellant’s due process rights under the Fifth Amendment. Harris v. Champion, 15 F.3d 1538, 1558 (10th Cir.1994). When examining these constitutional rights, we must look at the text, the history, the tradition behind the constitutional amendments, prior precedent, and practical consequences. See County of Sacramento v. Lewis, 523 U.S. 833, 857, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (must consider “history and tradition”); United States v. Mara, 410 U.S. 19, 37, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973) (must examine the teachings of history and tradition).
The federal courts have recognized that generally “there is no due process right to an appeal at all, but that an appeal must nonetheless comport with due process ‘if a State has created appellate courts as an integral part’ of its criminal justice system.” Smith, 94 F.3d at 206-07 (quoting Harris, 15 F.3d at 1558) (internal quotation marks omitted). The courts considering this issue have conducted a case-by-case basis analysis, applying a modified version of the four factors of Barker to determine whether the delay in an appeal violated an appellant’s due process rights to a speedy post-trial review. These four factors are: (1) length of the delay; (2) reasons for the delay; (3) the appellant’s assertion of his right to a timely appeal; and (4) prejudice to appellant. Barker, 407 U.S. at 529-33, 92 S.Ct. 2182.
In Barker, the Supreme Court adopted a “balancing test” approach in evaluating these factors in speedy trial violations “in which the conduct of both the prosecution and the defendant are weighed.” Barker, 407 U.S. at 530, 92 S.Ct. 2182. The “balancing test necessarily compels courts to approach speedy trial cases on an ad hoc basis.” Id. None of these four factors is “a necessary or sufficient condition to finding of a deprivation of the right of speedy trial.” Id. at 533, 92 S.Ct. 2182. Courts must engage in the “difficult and sensitive balancing process” of all of the factors in evaluating whether a post-trial delay violates an appellant’s due process. See id. at 533, 92 S.Ct. 2182.
In Toohey v. United States, 60 M.J. 100, 102 (C.A.A.F.2004), this Court recognized that servicemembers have a due process right to speedy appellate review and used modified Barker factors to evaluate whether appellate delay violates an appellant’s due process rights. See also Diaz v. Judge Advocate General of the Navy, 59 M.J. 34, 37-38 (C.A.A.F.2003) (servicemembers have a right to have their cases reviewed in a timely fashion).
Courts have viewed appellate delays differently than trial delays. “[N]ot every delay in the appeal of a case, even an inordinate one, violates due process.” Rheuark v. Shaw, 628 F.2d 297, 303 (5th Cir.1980). Most federal courts have not created a “benchmark” for triggering a presumption of prejudice. But see Harris, 15 F.3d at 1559-60 (Tenth Circuit has held that a two-year appellate delay will create a rebuttable presumption that the constitutional threshold has been crossed). See also Barker, 407 U.S. at 523, 92 S.Ct. 2182 (Court specifically rejected establishing a specified time period to bring a defendant to trial). The federal courts evaluate the peculiar circumstances of each case to determine whether the length of the delay provokes a constitutional inquiry. “[Ujnless there is a period of delay that appears, on its face, to be unreasonable under the circumstances, ‘there is no necessity for inquiry into the other factors that go into the balance.’ ” Smith, 94 F.3d at 209 (quoting Barker, 407 U.S. at 530, 92 S.Ct. 2182). “[I]f the constitutional inquiry has been triggered, the length of delay is itself balanced with the other factors” in the Barker analysis. Id. In extreme circumstances, the length of delay may give rise to a strong “presumption of evidentiary prejudice” to a defendant’s ability to defend himself at trial. See Doggett v. United States, 505 U.S. 647, 655-57, 112 *146 S.Ct. 2686, 120 L.Ed.2d 520 (1992).[1] But see Smith, 94 F.3d. at 212-13 (“We deem Doggett relevant, but we hold that the presumption of prejudice, if any, in this case of three-year appellate delay has been clearly rebutted.”) (emphasis added).
B. Applying the Barker Analysis to This Case
1. Length of the Delay
In this case, there has been delay of nearly 1,700 days between the completion of Appellant’s court-martial and the Court of Criminal Appeals’ decision. On its face, this delay is sufficient to trigger an inquiry using the Barker analysis.
2. Reasons for the Delay
Although there were significant delays at all phases of the post-trial process in this case, the greatest portion of that delay involves the period from when the case was docketed at the Court of Criminal Appeals until the briefing was complete. It is the majority’s conclusion regarding this period of delay with which I have the greatest disagreement. The appellate defense counsel requested and was granted eighteen enlargements of time in which to file a brief. The reason stated for enlargements four through eighteen was “other case load commitments.” The majority refuses to hold Appellant accountable for any portion of this delay even though neither Appellant nor his defense counsel requested assistance within the appellate division or outside the appellate division from outside contractors or other services’ appellate divisions to process this appéal. Despite the lack of a request for assistance because of “case load commitments,” incredibly, the majority concludes “there was no evidence demonstrating that the enlargements were directly attributable to Moreno.”
In my view, unless the appellate defense counsel was ineffective or was acting unethically or outside the scope of his authority, the actions he took to obtain additional delays in the filing of the appellate briefs were performed for and on behalf of Appellant. Presumably, appellate defense counsel filed requests for delays with the knowledge of Appellant because a reasonably effective counsel would have communicated with his client. The majority ultimately lays the blame for the delay at the feet of the Court of Criminal Appeals. It holds that regardless of the appellate defense counsel’s case load problems, the Courts of Criminal Appeals are responsible for the “timely management and disposition of cases docketed at the Courts of Criminal Appeals.”
This case reinforces the wisdom of the federal and state courts placing the burden on Appellant to show prejudice. There are a number of questions to be asked of defense counsel—What other cases did you have? How did you stagger them? Did you prioritize the cases? What issues were present? What were the difficulties in contacting Appellant? Was there a conflict in Appellant’s wishes and your desires? Did you request assistance from your supervisor?
The Government is simply not in a position to answer questions as to why the defense counsel asked for extended delays. See United States v. Lewis, 42 M.J. 1 (C.A.A.F.1995). Nor can the Government answer questions regarding the impact of the requested delays on the strategy, theories, or theme of the defense. Yet, contrary to the prevailing jurisprudence of federal and state courts, the majority relieves Appellant from his burden of demonstrating actual prejudice and incredibly shifts the responsibility for the delay to the Government. Thus, the majority has created an incentive for the defense to request enlargements knowing they will not be asked these questions absent a court order.
Delay must be examined on the basis of the facts in a specific case and not based on the length of delay alone. In fact, merely asking for numerous delays has ended up benefiting Appellant. Based on the majority decision, I predict that appellate courts will *147 receive many more requests for enlargements from appellate defense counsels in order to get the benefit of the presumption of unreasonable delay in a speedy appellate review scenario. It is incredible that while recognizing this lengthy period of time is attributable to the appellate defense counsel’s requests for delay, the majority declines to hold Appellant accountable for any of it.
3. Appellant’s Assertion of His Right to a Timely Appeal
Appellant never asserted a post-trial speedy review right or protested the length of delay in his case. While the demand rule is not conclusive in the speedy trial or appellate review context, it is extremely important in evaluating the length and reason for the delay as well as whether there is any personal prejudice. Barker, 407 U.S. at 531, 92 S.Ct. 2182. A complaint or protest would have at least indicated to the appellate court that Appellant was dissatisfied with the pace of his appeal. The determination of whether an appellant asserts his right to a speedy post-trial review is “entitled to strong eviden-tiary weight in determining whether [an appellant] is being deprived of the right.” Id. at 532-33, 92 S.Ct. 2182. The “failure to assert the right will make it difficult for [an appellant] to prove he was denied a speedy trial” review. Id. at 532, 92 S.Ct. 2182.
This factor becomes more significant when there are a number of options open to counsel and an appellant to complain about the delay. These options could ensure expediting the appeal to avoid any possible violation of post-trial delay. In this case, there is no indication that Appellant made efforts to prod appellate defense counsel or anyone else to expedite his appeal. Yet the majority shifts the responsibility for the entire period of delay onto the Government in spite of the requests for delay by Appellant through his appellate defense counsel.
What is the Government to do? Oppose defense requests for delay because the delay will be attributed to it? Should the Courts of Criminal Appeals deny defense requests for delays for fear the delays will be attributed to it or the Government? What is next? Will we begin to see appellate defense counsel raise the issue that an appellant was denied an opportunity to present his case on appeal because his reasonable request for a delay for filing his brief was denied?
Although the Supreme Court rejected the rule that a “defendant who fails to demand a speedy trial forever waives his right,” the Court did state that “[t]his does not mean, however, that the defendant has no responsibility to assert his right.” Barker, 407 U.S. at 528, 92 S.Ct. 2182. The principle set out in Barker is that an appellant’s “assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the [speedy trial] right.” Id. at 529, 92 S.Ct. 2182. The application of this formula allows the courts judicial discretion based on the circumstances as opposed to the application of some rigid rule that does not provide for consideration of the circumstances of the case. In its opinion, the majority in effect overlooks any application of this factor to the facts of this case even though it is a factor in the Barker analysis. Thus, I disagree with the majority and the weight, or lack thereof, they give to the absence of an assertion of the right to a speedy post-trial review.
4. Prejudice to Appellant
With respect to assessing the fourth factor—prejudice—the Supreme Court provided further guidance. Prejudice should be evaluated “in the light of the interests of defendants which the speedy trial right was designed to protect.” Barker, 407 U.S. at 532, 92 S.Ct. 2182. The interests are:
(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.

Id.

Lower courts applying the Barker test to appellate delay have adapted the prejudice factors to fit the circumstances of convicted parties on appeal: “(1) prevention of oppressive incarceration pending appeal; (2) minimization of anxiety and concern of those *148 convicted awaiting the outcome of their appeals; and (3) limitation of the possibility that a convicted person’s grounds for appeal, and his or her defenses in case of reversal and retrial, might be impaired.” Harris, 15 F.3d at 1559 (quoting Rheuark, 628 F.2d at 303 n. 8).
a. Prevention of Oppressive Incarceration Pending Appeal
Generally, incarceration will be considered “oppressive” if an appellant is confined while the appeal is pending and the substantive appeal is meritorious. See Cody v. Henderson, 936 F.2d 715, 719-21 (2d Cir.1991). In this case, the meritorious issue addressed by the Court concerns the denial of a challenge for cause against a court member. There were no successful issues regarding the sufficiency of evidence or the admissibility of evidence. Theoretically, the Government will be able to use the same evidence used at the original trial to retry Appellant. There is no way, based on the facts and evidence in this case, to conclude that Appellant’s incarceration was oppressive or out of the ordinary for a person convicted of an offense and sentenced to confinement.
Furthermore, Appellant was sentenced to six years of confinement. The majority, without any documentary evidence on which to rely, theorizes that Appellant was released from confinement after about four years of confinement. Assuming the majority is correct, apparently the delay in the appeal of Appellant’s ease did not affect his ability to obtain a minimum release date and to be released from confinement when that date was reached. Without knowing the outcome of the retrial, it is only supposition as to whether Appellant’s incarceration was excessive or oppressive.
b. Minimization of Anxiety and Concern While Awaiting Outcome of Appeal
I agree with the majority that “the appropriate test for the military justice system is to require an appellant to show particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision” and that the anxiety is not “dependent upon whether his substantive appeal is ultimately successful.” I disagree with the majority’s conclusion that Appellant’s anxiety was “distinguishable” because he had to register as a sex offender upon his early release from confinement. This consequence of Appellant’s conviction has been deemed a collateral consequence of a conviction by numerous courts and will not generally merit relief in those situations where an appellant proceeds to trial without knowledge of such a consequence. See State v. Young, 112 Ariz. 361, 542 P.2d 20 (1975); Ray v. State, 133 Idaho 96, 982 P.2d 931 (1999); State v. Schneider, 263 Neb. 318, 640 N.W.2d 8 (2002); Davenport v. State, 2000 ND 218, 620 N.W.2d 164; Mitschke v. State, 129 S.W.3d 130 (Tex.Crim.App.2004); State v. Bollig, 2000 WI 6, 232 Wis.2d 561, 605 N.W.2d 199; State v. Ward, 123 Wash.2d 488, 869 P.2d 1062 (1994); Johnson v. State, 922 P.2d 1384 (Wyo.1996).
How the majority can now classify a sex offender registration requirement as “distinguishable” anxiety is beyond comprehension. The record contains no information concerning the requirements for sexual offender registration in the state of California where Appellant resides, and what, if anything, will happen regarding the registration requirement for Appellant after the findings in his case are set aside and he is awaiting a new trial. The majority simply latches on to the assertion in Appellant’s brief that he had to register as a sex offender upon his release from confinement without any proof of registration or what the effects of setting aside the conviction and retrying Appellant would have on that requirement.
c. Limitation of Appellant’s Grounds for Appeal or Defenses at Retrial
The most serious factor in analyzing the prejudice factor is evaluating the ability of an appellant to assert: (i) his or her arguments on appeal; and (ii) his or her defense in the event of retrial or resentencing. See Barker, 407 U.S. at 532, 92 S.Ct. 2182; Harris, 15 F.3d at 1563. See also Smith, 94 F.3d at 211 (question is whether the delayed ruling by the appellate court actually preserved any *149 arguments the appellant would have asserted on retrial or resentencing and whether Appellant’s ability to assert these arguments was affected).
In this case, Appellant failed to establish any harm to his ability to present a defense or retry his case.[2] The substantive issue raised by Appellant related to the military judge’s denial of a challenge for cause against a panel member. It was a technical issue and did not relate to the presentation of the facts, the evidence, or defenses at trial. There is no danger to any of his potential arguments or ability to present a defense. At a retrial, the court member issue in this ease will be cured.
As to prejudice generally, one must recognize the difference between pretrial delay prejudice and post-trial delay prejudice. Pretrial delay prejudice involves planning a defense at trial with live witnesses who may not have committed their testimony either to an oral or written form. “When a full trial has occurred, even if there is an inordinate post-trial delay, the record of trial is preserved” and an appellant must make some showing of prejudice to establish a due process violation. Latimore v. Spencer, 994 F.Supp. 60, 71 (D.Mass.1998). In post-trial delay cases, there has been a conviction. Thus, the same anxiety that might occur in a pretrial scenario does not occur to the same extent in the post-trial scenario because the defendant is no longer cloaked with the presumption of innocence. Likewise, the concern that pretrial delay may affect the defendant’s ability to mount a defense because memories will dim or witnesses will become unavailable is not a concern with post-trial delay.
In the post-trial scenario, the defendant has been convicted after a full-fledged adversary proceeding and is given a complete verbatim copy of the record, together with appointed counsel and a right to appeal the case when the sentence extends to one year of confinement and/or a punitive discharge. Appellate review of military cases is much broader than in the civilian sector because the intermediate civilian appellate court has no factfinding capability. This procedure is essential because it allows defendants to have a fair chance to present persuasive arguments during the appellate process.
Appellate defense counsel have at their disposal the means of identifying any prejudice that might otherwise arise from the passage of time. If witnesses are not available, their former testimony can be introduced under Military Rule of Evidence (M.R.E.) 804(b)(1) and M.R.E. 801(d)(1)(A) and (B) or M.R.E. 803(5). Likewise, if memories fade, they can be refreshed under M.R.E. 612. If there is a change in testimony, the parties have a right to impeach the witness. M.R.E. 613. This verbatim record obviates most of the problems of retrials. Absent a showing at a United States v. Du-Bay, 17 C.M.A. 147, 37 C.M.R. 411 (1967), or motion hearing that Appellant is unable to present a defense, or collect exculpatory evidence as a result of the excessive delay, the charges should not be dismissed. See also State v. Hall, 145 Vt. 299, 487 A.2d 166 (1984) (defendant has burden of showing substantial prejudice because of the delay).
The most problematic aspect of the majority’s opinion is its application of the Barker prejudice factor. Appellant and the majority in this case merely speculate as to the potential harm. Rather than placing the burden on Appellant to show prejudice, the majority is intent on placing the responsibility for the delay on the Courts of Criminal Appeals. According to the holding of the majority, the Courts of Criminal Appeals have the responsibility for “the timely management and disposition of cases” regardless of whether an appellant in fact suffers prejudice as a result of post-trial delay, whether an appellant makes efforts to foster the delay, or does nothing to assert his right to a speedy review. The prejudice factor is the most critical factor in evaluating whether Appellant’s due process right to a speedy appellate review has been violated, yet the majority gives *150 this factor short shrift. I would conclude that Appellant has not met his burden to demonstrate actual prejudice by this post-trial delay.
III. The Reality of the Application of the Majority’s Specified Time Period
The majority does not adopt a “presumption of prejudice” but a prospective “presumption of unreasonable delay” if certain timelines are not met. The majority sets forth a “presumption of unreasonable delay” to be triggered by the following events:
(1) No action by convening authority within “120 days of the completion of trial”;
(2) Case not docketed with the service Court of Criminal Appeals within “thirty days” of convening authority’s action; and
(3) No decision by the service Court of Criminal Appeals rendered within “eighteen months of docketing the case.”
Once the timeline is violated, the “presumption of unreasonable delay” will exist, which will satisfy the first Barker factor regardless of whether an appellant is sentenced to or serving confinement. The timeline violation will then trigger the Barker four-factor analysis. Any delay beyond the time periods established must be “justifiable, case-specific delays supported by the circumstances of that ease and not delays based upon administrative matters, manpower constraints or the press of other cases.”
The majority stands presumptions on their heads, failing to appreciate which party has the privileged information. By shifting the responsibility to the Government rather than requiring an appellant to demonstrate actual prejudice, the Court overlooks that the evidence of prejudice is peculiarly within an appellant’s control. Raising denial of due process because of appellate delay does not constitute the waiver of the attorney-client privilege and therefore puts the Government in a very awkward position. This is why federal and state courts have placed the burden on the appellant to show actual prejudice.[3]
The majority has established a nonexclusive list of potential remedies for those situations where a reviewing court determines there is a denial of speedy post-trial or appellate review. The remedy is supposed to be tailored to the circumstances of the case:
The nature of that relief will depend on the circumstances of the case, the relief requested, and may include, but is not limited to: (a) day-for-day reduction in confinement or confinement credit; (b) reduction of forfeitures; (c) set aside of portions of an approved sentence including punitive discharges; (d) set aside of an entire sentence, leaving a sentence of no punishment; (e) a limitation upon the sentence that may be approved by a convening authority following a rehearing; and (f) dismissal of the charges and specifications with or without prejudice. Clearly this range of meaningful options to remedy the denial of speedy post-trial processing provides reviewing authorities and courts with the flexibility necessary to appropriately address these situations on a case-by-case basis.
Certainly, it is a much more cumbersome and time-consuming process to try a case, transcribe a record, have counsel,[4] the military judge, the staff judge advocate, and the convening authority review the records of trial, have the convening authority take action on the case, and then, make the requisite *151 number of copies of the record and exhibits to forward to the Courts of Criminal Appeals than it is for an appellate court to review a completed record and consider and decide the issues raised. Yet, the majority has set out an arbitrary timeline for the post-trial processing of a case in the field without regard to the complications and complexity of the ease and the realities of today’s mobile, deployed forces.
The majority, who does not suffer the same complications and complexities of those in the field, and who receives the benefit of receiving a completed, typed record to review, has provided that those individuals in the field should have essentially five months to get a completed record to the service courts for docketing. Then, the majority provides the Courts of Criminal Appeals with eighteen months from docketing to completion of review. This Court has not always followed its own standard of completing review within eighteen months. I suggest that if we are going to set up rules, the rules might apply to ourselves as well.
The Court’s master docket reveals that as of February 7, 2006, there were three cases over 1,000 days old, which is more than the eighteen-month standard set out by the majority for the Courts of Criminal Appeals to issue opinions. There were also more than thirty cases in which the petition had been granted and no action had been taken for over 400 days. Additionally, there were more than twenty-four cases where petitions had been pending for over eighteen months in which no action had been taken on the petition.
My purpose in mentioning these delays is not to be critical of this Court, but rather to underscore that there are valid reasons for the length of time it takes to conduct a thorough appellate review of a case whether it be before this Court or a Court of Criminal Appeals.[5] Many eases are very complex and case load commitments of counsel are often legitimate reasons to seek enlargements of time in order to represent one’s client adequately and ethically. Let me be very clear that I do not condone many of the delays we have encountered in the military justice system, including the delay in this case. I share the concerns of the majority and urge the appropriate legislative and executive branch officials to take all necessary steps to address resource and other issues that impact on the efficient and timely processing of eases for appellate review. I do not, however, believe justice is served by overstepping our judicial role and establishing timeline rules, albeit cloaked in the guise of presumptions, for the post-trial processing of cases.
The majority acknowledges in its opinion that timelines in the past have not worked, but yet they plug ahead establishing such rules.[6] We are not a rulemaking body and, if we were, we should not adopt a bright-line rule unless it would approximate a correct result. These rules will not solve the problem and will cause considerable anxiety among those who have to do the yeoman’s work of getting the record to the appellate courts. I also believe that, in the haste to meet these arbitrary timelines, we will see more errors or mistakes in the post-trial processing and in the appellate review of eases, poorly constructed records of trials, and even the trampling of the rights of the accused. We have already seen situations where appellate defense counsel, in an attempt to move cases along, file pleadings before giving their clients a reasonable opportunity to raise issues with them and the appellate courts.
In evaluating what remedy it should grant in regard to the lengthy post-trial delay in this ease, the majority looks at potential rem *152 edies without considering the seriousness or the nature of the offenses involved. I respectfully dissent from the majority’s conclusion of a violation of Appellant’s right to a speedy post-trial review absent a showing of actual prejudice to the findings or sentence by Appellant. It is not enough for an appellant to claim anxiety as to the outcome of the appeal. See People v. Missouri, 100 Mich. App. 310, 299 N.W.2d 346, 352-53 (1980). Even in the pretrial scenario, it has been held that a ten-year delay does not create a presumption of prejudice. See, e.g., United States v. Mohawk, 20 F.3d 1480, 1488 (9th Cir.1994). There must be a showing of actual prejudice.[7]
IV. Conclusion
This Court is not a rulemaking body. Attempts at rulemaking in the past have proven to be unworkable, and we should not venture into that area again. The Court should leave the rulemaking function where it belongs—to the executive and legislative branches. If the facts of this case establish a violation of the Appellant’s right to a speedy post-trial review upon applying the Barker test, then so be it. But, this Court should not create rules that exceed the bounds of the separation of powers doctrine, and that will not accomplish the desired result.

. Under the Doggett presumption of prejudice analysis, if the delay triggers the Barker analysis, there is a presumption of prejudice and "the only question is how much ‘importance’ to assign to that prejudice.” Smith, 94 F.3d at 212.

. The majority acknowledges that Appellant failed to "identify any specific harm that he would encounter at a rehearing" and that he “failed to establish prejudice under this sub-factor.”

. The Georgia Supreme Court recently concluded:
[P]rejudice necessary to establish a due process violation based on post-conviction direct appeal delay is prejudice to the ability of the defendant to assert his arguments on appeal and, should it be established that the appeal was prejudiced, whether the delay prejudiced the defendant’s defenses in the event of retrial or resentencing.
Chatman v. Mancill, 280 Ga. 253, 626 S.E.2d 102, 109-10 (2006). See also Lopez v. State, 105 Nev. 68, 769 P.2d 1276, 1288-89 (1989).

. Pursuant to R.C.M. 1105(c)(1), an accused has ten days upon service of the authenticated record of trial or the staff judge advocate’s recommendation to submit matters for consideration. This time period may be extended for an additional twenty-day period. If the staff judge advocate’s addendum contains new matter, then the accused is entitled to another ten days to respond. The process of post-trial submissions by the defense generally will consume at least thirty to forty days of the 120-day time limit set by the majority.

. Each case must be evaluated for "unreasonable” post-trial delay based on the facts and circumstances of the case and not some arbitrary timeline imposed by an appellate court.

. See United States v. Burton, 21 C.M.A. 112, 118, 44 C.M.R. 166, 172 (1971) (establishing a three-month rule for a pretrial delay), modified by United States v. Driver, 23 C.M.A. 243, 246, 49 C.M.R. 376, 379 (1974)(explicitly changing the rule from “three months” to "ninety days”); Dunlap v. Convening Authority, 23 C.M.A. 135, 138, 48 C.M.R. 751, 754 (1974) (establishing a ninety-day rule for a post-trial delay). But see United States v. Kossman, 38 M.J. 258, 261 (C.M.A.1993) (overruling Burton and Driver); United States v. Banks, 7 M.J. 92, 93-94 (C.M.A.1979) (overruling Dunlap).

. See, e.g., Elcock v. Henderson, 28 F.3d 276, 279 (2d Cir.1994) (absent showing actual prejudice, no violation of due process for eight-year delay between conviction and appeal); Heiser v. Ryan, 15 F.3d 299, 303-04 (3d Cir.1994) (absent actual prejudice thirteen-year delay was not a violation of due process); United States v. Alston, 412 A.2d 351, 361-62 (D.C.1980) (must show actual prejudice); State v. Chapple, 135 Ariz. 281, 660 P.2d 1208 (1983) (en banc) (must show actual prejudice).