A06A1549. THREATT v. THE STATE.

(640 SE2d 316)

BARNES, Judge.

William Homer Threatt appeals the denial of his motion to dismiss the indictment. He contends that the seven years of post-conviction delay before his motion for new trial was granted prejudiced his new trial's defense, thus violating his constitutional due process rights. Upon review, we do not find that Threatt's due process rights were violated, and affirm.

The record shows that a jury found Threatt guilty of shooting and injuring a woman, and on June 10, 1998, he was sentenced as a recidivist to serve 20 years for aggravated assault. His trial counsel filed a timely motion for new trial. On February 16, 1999, Threatt filed a motion for appointment of new counsel to handle his motion for new trial and appeal, alleging as one of his claims ineffective assistance of counsel. Subsequently, on February 24, 1999, his trial counsel filed a motion to withdraw as counsel, which the trial court granted on March 15, 1999.

Beginning in March 1999, Threatt wrote several letters to the trial judge, the clerk of the superior court, and the district attorney inquiring about his case, asserting that several necessary witnesses were not subpoenaed for trial, and asking for information regarding

his new attorney. He also requested an index of everything that had been filed in his case, including the motions and trial transcripts. The clerk of the Cherokee County Superior Court sent Threatt an index of his case on May 4, 1999, and on May 7, 1999, Threatt was appointed new counsel for his appeal.

Threatt's new appellate counsel filed his entry of appearance on June 29, 1999. In August 1999, Threatt mailed the clerk and judge copies of several of his letters to his new appellate counsel complaining that he had not heard from him. He wrote to the clerk again in September 1999 and March 2000, requesting an up-to-date copy of his case index, and also informing the clerk that he had moved to a new prison and had still not heard from his new attorney. A notation by the clerk on these letters reflects that a copy of the entire case file was sent to Threatt on September 22, 1999, and a copy of the index was sent on April 18, 2000. The record includes no other communication until May 2001, when Threatt wrote the clerk regarding an earlier charge of influencing witnesses that was dismissed, requesting another case file index, and also inquiring about obtaining a new attorney as the earlier appointed attorney would not "write me or take a call from me." The clerk responded by letter dated June 6, 2001 and furnished Threatt with the name of the chief judge of the Cherokee County Superior Court and with another copy of the docket index for his case. The clerk sent a copy of this letter to Threatt's appointed attorney.

On June 26, 2002, the chief judge sent Threatt's new counsel a letter reminding him that the motion for new trial had not been ruled on and as Threatt's new counsel he was to "handle this matter." The new attorney apparently met with Threatt during the summer of 2003, but in April 2004, Threatt filed a motion requesting that the new attorney be removed from his case and a substitute counsel appointed, alleging that new counsel had a conflict of interest and refused to pursue an ineffective assistance claim against his trial attorney. The record also includes an April 17, 2004 letter from Threatt to his new attorney referencing a telephone conversation that month requesting copies of the attorney's work on the amended motion for new trial and advising him not to schedule a hearing on his motion for new trial because he wanted the trial court to first inquire into his conflict allegation.

On May 11, 2004 Threatt's attorney requested a hearing on the new trial motion.[1] He also filed a motion to modify the sentence on

---

[1] The request was sent to a new superior court judge because of the original trial judge's death.

August 13, 2004, and an amended motion for new trial on September 7, 2004, which included an ineffective assistance claim.

The trial court heard Threatt's conflict issues in a hearing on September 17, 2004, and held two hearings on his new trial motion on October 13 and December 1, 2004. On March 30, 2005, the trial court granted Threatt's motion for new trial based on the trial judge's failure to charge on Threatt's election not to testify. Threatt was also appointed new counsel who then filed a motion to dismiss his indictment alleging a violation of his due process rights because of the seven-year post-trial delay. The trial judge conducted a lengthy hearing on June 28, 2005, and denied the motion without explanation on December 29, 2005. Threatt timely filed his notice of appeal from this order.

Even though the Sixth Amendment to the Constitution of the United States does not guarantee a right to a speedy appeal, "due process concepts necessarily become implicated when substantial delays are experienced during the criminal appellate process." *Walker v. State*, 247 Ga. 484, 485-486 (277 SE2d 242) (1981). "Although the interests at stake before trial and before appeal obviously differ, [the right to a speedy trial and speedy post-conviction appeal] are sufficiently similar to warrant the same general approach." (Citation omitted.) *Chatman v. Mancill*, 280 Ga. 253, 257 (2) (a) (626 SE2d 102) (2006). See also *Graham v. State*, 171 Ga. App. 242, 250 (7) (319 SE2d 484) (1984) (defendant's interests in speedy trial and speedy appeal are similar; balancing test for speedy trial violations applies when a defendant claims that a delay in appeal violates due process).

In this appeal, as the trial court granted a new trial because of an issue unrelated to the delay associated with the appeal, the issue becomes whether the delay prejudiced the defendant's defenses upon retrial. "[A]ppellate delay is prejudicial when there is a reasonable probability that, but for the delay, the result of the appeal would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Citation and punctuation omitted.) *Chatman v. Mancill*, supra, 280 Ga. at 260-261 (2) (e).

The U. S. Supreme Court identified four factors in *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972), to be regarded by a court in determining whether an accused's constitutional right to a speedy trial had been violated, which we also consider in determining if the appellate delay violated Threatt's right to due process of law concerning his retrial: (i) the length of the delay, (ii) the reason for the delay, (iii) the defendant's assertion of his right, and (iv) the prejudice to the defendant. Id. at 530. These factors, individually, are neither necessary nor sufficient by themselves to find that the appellant's due process rights were violated; rather, these factors should be considered together in a balancing test weighing the

conduct of the State and the appellant contributing to the delay. Id. at 533. On appeal, we apply the *Barker* factors to determine whether the trial court abused its discretion in ruling that Threatt's due process rights were not denied due to the lengthy delay between his first trial and the retrial. See *State v. Redding*, 274 Ga. 831, 831-832 (561 SE2d 79) (2002).

a. As to the first *Barker* factor, the length of delay, Threatt was delayed more than seven years before the trial court considered his motion for a new trial. The State concedes the delay, which at 90 months is presumptively prejudicial. *State v. Carr*, 278 Ga. 124, 126 (598 SE2d 468) (2004).

b. The second *Barker* factor is the reason for the delay. The delay in this case was caused by a confluence of inattention by Threatt's first appellate counsel, the State, and the trial court. It is nothing less than disgraceful that the lawyer appointed to represent Threatt in his appeal on May 7, 1999, failed to seek a hearing on his motion for new trial for five years, until May 14, 2004. According to the record, the attorney did not even contact Threatt for four years, despite Threatt's heroic attempts to generate some response from the attorney. A lawyer who accepts an appointment to represent an indigent client has a duty toward the client and the courts to fulfill his obligations. See *Spradlin v. State*, 262 Ga. App. 897, 901 (3) (587 SE2d 155) (2003).

The State alleges in its brief that it is not at fault for the delay because the district attorney, upon receiving Threatt's letters, contacted appellate counsel who implied that he was aware of Threatt's requests. Given the repeated correspondence from Threatt about his counsel's failure to act, this is an inadequate response. In another context, our Supreme Court has held that "[w]here no reason appears for a delay, we must treat the delay as caused by the negligence of the State in bringing the case to trial." *Boseman v. State*, 263 Ga. 730, 733 (438 SE2d 626) (1994).

The State also argues that Threatt caused the delay by requesting new appellate counsel because he believed that his trial counsel was ineffective. As our law requires that such claims be pursued by new counsel, this is a hollow argument. Further, Threatt sought a second appellate counsel because the first one did nothing for an extended period of time. "Any failure of the indigent defense system to represent its clients is directly or indirectly the responsibility of the State and the trial court to oversee the functioning of the criminal justice system." *Spradlin v. State*, supra, 262 Ga. App. at 901 (3) (holding State responsible for delay where indigent's appellate attorney failed to pursue post-trial remedies; district attorney and trial court knew appellant was in state prison; and motion for new trial had not been resolved). Although we also note that the record does not

establish that the State deliberately attempted to delay the appeal to hamper the defense, unexplained delays and delay due to the State's negligence must be weighed against the State. *Boseman v. State,* supra, 263 Ga. at 733. This is particularly so here, because the record shows that in this jurisdiction the District Attorney's office schedules the court dates.

When, as in this case, the State knows that a defendant is languishing in confinement while his appellate counsel is doing nothing to advance his client's cause, the State has a responsibility to bring the matter to the attention of the trial court, and, if all else fails, seek a hearing on its own motion. What the State cannot do is effectively do nothing. When the State receives or is aware of repeated correspondence from a defendant complaining that an appeal is not being pursued, merely repeatedly calling the appellant's attorney, as was apparently done here, is not sufficient to satisfy the State's obligation.

Although much of the blame for the delay lies with Threatt's first appellate counsel and with the State, the trial court also has a responsibility to supervise its appointed attorneys and to monitor its own calendar.

As we have stated before,

> the courts have a duty to the citizens of this state to oversee the criminal justice system and to ensure that those who are accused of crimes are tried expeditiously, and that their constitutional rights are protected. The delay which has occurred in this case is simply not acceptable. The legislature has provided that a defendant must file a motion for new trial within 30 days of the entry of the judgment on the verdict. This and other statutorily established time limits clearly indicate the intention of the legislature that criminal matters be resolved promptly. [Almost seven] years is too long to take to address a motion that must be filed in thirty days. The judicial branch, prosecutors, and the criminal defense bar all have a duty to meet their respective responsibilities in ensuring that criminal cases are promptly resolved. The State is not without responsibility to ensure criminal cases are resolved expeditiously. It simply cannot allow motions for new trial to remain unresolved for [seven] years. Given the fact that approximately 60 percent of criminal defendants are indigent, they must rely upon appointed counsel and lack the ability to retain counsel if no action is taken on their case.

(Citation and punctuation omitted.) *Spradlin v. State*, supra, 262 Ga. App. at 900.

Accordingly, we find that no reasonable explanation for the delay was provided.

c. As to the third *Barker* factor, the record reflects that Threatt made numerous attempts to resolve his appeal. The record is replete with the letters and motions he wrote over the years to his lawyer, the district attorney, the superior court judge, the superior court clerk, this court, and this court's clerk, alleging his innocence, requesting a new trial and new counsel, and inquiring about the status of his case and how to proceed further. Threatt clearly asserted his right to a prompt disposition of his appeal, but was ignored.

d. Finally, *Barker* requires an inquiry regarding any prejudice Threatt suffered as a consequence of the delay. *State v. Carr*, supra, 278 Ga. at 126. A long delay does not per se prejudice the accused's ability to defend himself; Threatt must also show that the passage of time prevented the presentation of an adequate defense that would have otherwise been available.

To analyze prejudice resulting from delay, we must consider whether it has increased the possibility that the defense will be impaired. *Chappell v. State*, 272 Ga. App. 1, 3 (611 SE2d 157) (2005). As our Supreme Court recently held,

> the prejudice necessary to establish a due process violation based on post-conviction direct appeal delay is prejudice to the ability of the defendant to assert his arguments on appeal and, should it be established that the appeal was prejudiced, *whether the delay prejudiced the defendant's defenses in the event of retrial or resentencing.*

(Citations omitted; emphasis supplied.) *Chatman v. Mancill*, supra, 280 Ga. at 260 (2) (e). Thus, if the delay has not

> impaired a defense which would otherwise be available to an appellant where a new trial is ordered due to trial error, an appellant has not suffered the prejudice which turns a post-trial delay into a violation of due process of law.

(Citation and punctuation omitted.) *Mize v. State*, 209 Ga. App. 15, 18 (3) (432 SE2d 621) (1993). Threatt's brief poses the question, "at what point must appellant prove actual prejudice?" That point was at the hearing on his motion to dismiss, and he failed to carry his burden.

Regarding the prejudice factor, Threatt first alleges that several of his witnesses are missing or dead. The fact that a witness has died or disappeared, standing alone, is not sufficient to show prejudice at

the retrial. There must be some correlation between the witnesses' death or unavailability and the delay, and Threatt must show that the missing witness would have supplied material evidence for the defense. *State v. Allgood*, 252 Ga. App. 638, 640 (4) (556 SE2d 857) (2001). This he has not done.

Threatt's primary allegation is that a potential witness who died in 1999, Billy Pike, admitted to others that he was the person who actually shot the victim. Threatt argues that several witnesses said that they heard or knew that Pike had confessed to the crime and that Threatt was not present. Because Pike died soon after Threatt was convicted, we cannot assume that the delay affected how Threatt would handle the witness's death at his retrial, and Threatt has not demonstrated how the delay affected his ability to deal with the witness's death. Because Pike has died, this evidence may be admissible under the necessity rule. See OCGA § 24-3-1 (b); *Chapel v. State*, 270 Ga. 151 (510 SE2d 802) (1998). Thus, we do not find that Threatt has established that the delay in his appeal prejudiced his ability to use this evidence at retrial.

Threatt's other allegation is merely a generalized statement that witnesses have died, many witnesses are unavailable, and all of the witnesses' memories have faded. He has established neither the substance of these witnesses' testimony nor their admissibility. To the extent that he is claiming that one or more of these witnesses would testify that Pike admitted to them that he was the one who shot the victim, Threatt has not shown why this testimony was not cumulative of other witnesses' testimony who are available to testify. Moreover, although he also alleges that some audio- and videotaped evidence is now missing from the evidence room, he has not shown why the original trial transcript of the tapes' contents is insufficient to compensate for the missing evidence. Threatt has merely argued theoretical prejudice because of possible conflicts between the contents of the missing tapes and the trial transcripts, not actual prejudice and conflicts.

He also alleges that one of his key defense witnesses, who would testify that Threatt was not present when the shooting occurred, is missing and her location was unknown at the time of the motion hearing. Nothing in the record, however, shows that the appeal delay made Threatt unable to locate the witness, who did not testify at the first trial and may not have been available then, either. Therefore, we do not find that Threatt has shown the required prejudice in regard to this witness.

While Threatt further alleges that the detective's memory about his investigation has faded, those memory lapses must substantially relate to a material issue to be prejudicial. See *Barker*, supra, 407 U. S. at 534; *Jackson v. State*, 231 Ga. App. 187, 189 (2) (498 SE2d 780)

(1998). Here, it appears that the detective forgot inconsequential information, such as the relationship between people, and he could not independently recall various information, such as the location of evidence, the names of witnesses he interviewed, or specific discussions with the district attorney, although he had notes that included all of that information. Threatt has not shown how these failings of memory substantially related to a material issue or would hamper the presentation of his defense on retrial.

Threatt contends that the district attorney was aware of the allegations about Pike, but did not investigate his alleged confession or inform the detective assigned to the case. Threatt also maintains that his trial attorney failed to subpoena the witnesses who heard the man confess, two of whom are now dead, and one of whom has brain damage as a result of a motorcycle accident, according to his family. None of these witnesses testified during the first trial because for whatever reason Threatt's trial counsel did not call them. Although this may reflect inadequate trial preparation for the first trial, our understanding of what is required to establish a due process violation here is a showing of prejudice upon Threatt's retrial, and not problems with the first trial due to his original trial counsel's alleged failures. Whether Threatt's original trial attorney was ineffective during his first trial requires a different inquiry altogether, and has no relevance to this issue, which is whether the appellate delay resulted in due process violations because it prejudiced his defense at his new trial.

While the unavailability of material witnesses would create almost certain prejudice in a speedy trial analysis regarding a first trial on the merits, see, e.g., *Hester v. State*, 268 Ga. App. 94, 100 (4) (601 SE2d 456) (2004), the same is not necessarily true when retrials are concerned. We find the language in *United States v. Mohawk*, 20 F3d 1480, 1487-1488 (III) (9th Cir. 1994) persuasive:

> Two sorts of prejudice to a defendant are feared from extreme delay. First, there is the possibility that witnesses will "die or disappear," or that their memories will fade, leaving them "unable to recall accurately events of the distant past." *Barker*, 407 U. S. at 532. Second, there is the problem of "time's erosion of exculpatory evidence," [*Doggett v. United States*, 505 U. S. 647, 655 (112 SC 2686, 120 LE2d 520) (1992)], the risk that a defendant will be deprived of a fair opportunity of pursuing facts that will be useful in his defense before the trail is cold. It is evident that, in the pre-trial delay context, it is quite impossible to judge how significant these sorts of concerns may be, hence there is no way to evaluate their likely impact on an accused's defense.

A presumption of prejudicial impact thus makes sense in such context. The same cannot be said, however, in a situation involving appellate delay. The criminal defendant who prevails in a delayed appeal will ordinarily have been convicted (albeit under circumstances requiring reversal) in a full-fledged adversary proceeding of which there is a complete and reliable record. Such an appellant, in facing the prospect of retrial, thus has at his disposal the means of combating or at least of identifying any prejudice to his defense that might otherwise arise from the passage of time. If important witnesses have become, for one reason or another, unavailable, their former testimony may be introduced at the second trial. If memories have faded, they can be refreshed, using the record compiled in the first trial. If key testimony unaccountably changes, it can be impeached by the same means. *See generally United States v. Chavez*, 979 F2d 1350, 1355 (9th Cir. 1992) (explaining how availability of trial transcripts obviates problem of impairment of defense on retrial). As for the opportunity to collect exculpatory evidence, a defendant is in no sense deprived of this by a delay before retrial, so long as he was able to pursue this opportunity in connection with his original trial.

Accordingly, we conclude that the trial court did not abuse its discretion in denying Threatt's motion to dismiss his indictment for a violation of his due process rights caused by the seven-year delay in his appellate process.

*Judgment affirmed. Andrews, P. J., and Bernes, J., concur.*

DECIDED NOVEMBER 21, 2006 —
RECONSIDERATION DENIED DECEMBER 14, 2006 — ▮▮▮▮▮▮▮▮▮

*Benjamin B. Reed*, for appellant.

*Garry T. Moss, District Attorney, Samuel K. Barger, Assistant District Attorney*, for appellee.