**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 27, 2014**

# In the Court of Appeals of Georgia

A13A1951. SINGLETON v. THE STATE.

MILLER, Judge.

Following a jury trial, Leslie Howard Singleton was convicted of armed robbery (OCGA § 16-8-41 (a) (2000)), two counts of aggravated assault OCGA § 16-5-21 (a) (1)(2000)), and possession of a firearm during the commission of a crime (OCGA § 16-11-106 (b) (1)(2000)). Singleton appeals from the denial of his motion for new trial, contending that (1) the evidence was insufficient to support his convictions; (2) the trial court erred in admitting hearsay testimony in violation of his confrontation right, and in holding a witness in contempt in the presence of the jury; (3) the delay in hearing his motion for new trial and the trial court's failure to deem him indigent violated his due process rights; and (4) his trial counsel provided ineffective assistance. For the reasons that follow, we affirm.

Viewed in the light most favorable to Singleton's conviction and sentence,[1] the evidence shows that early in the morning of July 1, 2000, the victim, who is an investigator with the Fulton County Sheriff's Department, went to the Windjammer Apartments in Clayton County, Georgia to execute an arrest warrant. The victim, who was not in uniform, was carrying a black backpack which contained his service weapon – a 40 caliber Glock pistol – with extra clips, pepper spray, handcuffs, and a handcuff key. The victim's gun had the words "Fulton County Sheriff's Department" stamped on it.

When the victim arrived at the apartment complex, he drove around a couple of times until he located the apartment in question. The victim then backed into the farthest parking space, verified that he had the right apartment building, and exited his vehicle so he could confirm the apartment number. The victim threw his backpack over his shoulder and walked toward the apartments. When the victim reached the end of the corridor where the stairs were located, a young African American man came up a flight of stairs next to where the victim was standing. The young man was approximately 16 to 19 years old, was about 5'11" tall and weighed around 145 to

_____

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

155 pounds. The young man wore a bandana mask and a backwards hat, and he came off the stairs with a chrome-plated revolver which he pointed at the victim's face.

The victim identified himself as a police officer, said he would give the young man whatever he wanted and then tossed his backpack to the young man. The victim then reached for his wallet, which was in his back pocket, and again said "I'm a police officer." When the wallet came out of the victim's pocket, it opened up, causing his police badge to become visible. The young man then ran down the stairs with the backpack.

Later on that same day, Singleton met a friend, Ameisha Witt, at her home off of Riverdale Road. Witt's cousin was also at her house when Singleton arrived, and Singleton had the victim's gun. Singleton initially told Witt that he found the gun "in the woods."

Later that day, Singleton met Witt again at Michael Waters's home. Witt's boyfriend, David Mierez, was also at Waters's home that day. When Singleton arrived, he still had the victim's gun with him. That night at Waters's home, Singleton told Witt that he got the victim's gun when he "robbed a cop" in Windjammer. Singleton also told Mierez that a man had thrown him the gun inside a backpack.

3

1. Singleton contends that the evidence was insufficient to support his convictions. We disagree.

A person commits the offense of armed robbery when, with intent to commit theft, he takes property of another from the person or immediate presence of another by use of an offensive weapon. OCGA 16-8-41 (a) (2000). A person commits the offense of aggravated assault when he assaults with the intent to rob. OCGA 16-5-21 (a) (1) (2000).

A person commits the offense of possession of a firearm during the commission of a felony when he has on or within arm's reach of his person a firearm during an armed robbery. OCGA § 16-11-106 (b) (1) (2000). "Where a robbery is committed by the use of a firearm, separate convictions for armed robbery and possession of a firearm during the commission of a crime are specifically authorized by OCGA § 16-11-106 (e)." (Citations and punctuation omitted.) *Howze v. State*, 201 Ga. App. 96, 97 (410 SE2d 323) (1991). Contrary to Singleton's contention, the evidence, as set forth above, was more than sufficient to support his convictions for armed robbery, aggravated assault and possession of a firearm during the commission of the armed robbery.

4

2. Singleton also contends that the trial court erred in admitting Waters's hearsay statement in violation of Singleton's confrontation right, and that the trial court erred in holding Waters in contempt in the presence of the jury. We discern no error.

At trial, the prosecution called Waters as a witness. When Waters told the trial judge that he did not want to testify, the State moved to hold Waters in contempt. The judge then held Waters in contempt of court, sentenced him to serve 30 days, and told the State to again ask Waters to be sworn in. The State asked Waters to swear in and testify three more times, and each time he refused. After each refusal, the Judge held Waters in contempt of court, and added 30 additional days to his sentence, resulting in a total sentence of 120 days for contempt. Although the jury was present during this entire exchange, Singleton did not object. Instead, Singleton moved for a mistrial after the judge told the State to call its next witness.

The trial court denied Singleton's motion for mistrial and, over his subsequent hearsay objections, allowed the State to call Fulton County Police Detective Frank Martin as a witness. Detective Martin testified that, on July 7, 2000, he spoke with Waters in the course of his official investigation in an unrelated case. Waters told

5

Detective Martin that Singleton stole the victim's gun from a police officer during a robbery at the Windjammer Apartments in Clayton County.

a. Confrontation Right

> The [C]onfrontation [C]lause imposes an absolute bar to admitting out-of-court statements in evidence when they are testimonial in nature, and when the defendant does not have an opportunity to cross-examine the declarant. … [S]tatements made to police officers during an investigation qualify as testimonial.

(Citations and punctuation omitted.) *Jackson v. State*, 291 Ga. 22, 24 (2) (727 SE2d 106) (2012). Although Singleton's trial occurred before the United States Supreme Court issued its opinion in *Crawford v. Washington*, 541 U.S. 36 (124 SCt 1354, 158 LEd2d 177) (2004), we apply that decision retroactively to cases, such as Singleton's, which are pending on direct review. See *Soto v. State*, 285 Ga. 367, 369 (2) (a) (677 SE2d 95) (2009).

Pretermitting whether Singleton waived this issue by failing to object on Sixth Amendment grounds,[2] any error in admission of Waters's statement was harmless.

---

[2] We note that Singleton raised only a hearsay objection to the admission of Waters's statement at trial.

[t]here is a distinct difference between a challenge to the admission of

6

Notably, Waters's testimony was cumulative of other admissible testimony that the victim's gun was inside a backpack that was thrown to Singleton during the Windjammer robbery. See *Miller v. State*, 289 Ga. 854, 857 (2) (717 SE2d 179) (2011) (admission of evidence in violation of confrontation right can be harmless error where evidence at issue is cumulative); *Brown v. State*, 288 Ga. 404, 408 (3) (703 SE2d 624) (2010) (admission of hearsay was harmless error because hearsay was cumulative).

b. Holding Waters in contempt in the jury's presence.

---

evidence based upon the Confrontation Clause and that based upon an exception to the hearsay rule. Although the rules concerning the Confrontation Clause and hearsay evidence generally protect similar values, they do not always prohibit the same evidence. The Confrontation Clause may bar the admission of some evidence that would be admissible under an exception to the hearsay rule. The converse is equally true: merely because evidence is admitted in violation of a long-established hearsay rule does not lead to the automatic conclusion that confrontation rights have been denied.

(Citations and punctuation omitted.) *Walton v. State*, 278 Ga. 432, 434 (1) (603 SE2d 263) (2004).

"The decision to grant a mistrial is within the discretion of the trial court and will not be disturbed on appeal unless there is a showing that a mistrial is essential to the preservation of the right to a fair trial." (Citation omitted.) *Jackson v. State*, 292 Ga. 685, 689 (4) (740 SE2d 609) (2013). The trial court also has a wide latitude of discretion in controlling the examination of witnesses, and this Court will not reverse on appeal absent a manifest abuse of that discretion. See *Sillah v. State*, 291 Ga. App. 848, 849 (1) (663 SE2d 274) (2008).

Singleton argues that the trial court's extended colloquy with Waters and the State created the impression that Waters was trying to protect Singleton and thus implied his guilt. Pretermitting whether Singleton waived this error by failing to make a contemporaneous objection, we find that under the specific circumstances of this case there was no reversible error, even though the better practice would have been to remove the jury from the courtroom before holding a witness in contempt. See *Roberts v. State*, 208 Ga. App. 628 (1) (431 SE2d 434) (1993) (holding that recommended practice is to remove jury from courtroom while trial court holds witness in contempt).

Notably, Waters was called to the stand as a witness for the State. Therefore, the jury's knowledge that he was held in contempt for failing to testify was unlikely

to give rise to any prejudicial inferences against Singleton. See *Hendricks v. State*, 283 Ga. 470, 473 (3) (660 SE2d 365) (2008) (no prejudicial inference where trial court informed jury that State's witness refused to testify and was held in contempt). Moreover, the record shows that the State merely asked Waters to be sworn in, and never asked him any questions that suggested Singleton's guilt.[3] Accordingly, under the circumstances of this case, Singleton has not shown that the trial court manifestly abused its discretion or that a mistrial was essential to the preservation of his right to a fair trial.

3. Singleton also contends that the more than 10-year delay in hearing his motion for new trial, and the trial court's error in failing to deem him indigent violated his due process rights.

a. The appellate delay did not violate Singleton's due process rights.

In determining whether an appellate delay violated a defendant's due process rights, we apply "the four speedy trial factors set forth in *Barker v. Wingo*, 407 U. S. 514 (92 SCt. 2182, 33 LE2d 101) (1972), which are the length of the delay, the reason

---

[3] Compare *Lawrence v. State*, 257 Ga. 423, 424-425 (3) (360 SE2d 716) (1987) (finding reversible error where witness invoked right to remain silent and trial court thereafter in jury's presence permitted State to ask witness fourteen leading questions suggestive of defendant's guilt).

for the delay, the defendant's assertion of his right, and *prejudice to the defendant.*"
(Citation omitted, emphasis supplied.) *Browning v. State*, 283 Ga. 528, 531 (2) (b)
(661 SE2d 552) (2008); see also *Threatt v. State*, 282 Ga. App. 884, 886 (640 SE2d
316) (2006). "These factors, individually, are neither necessary nor sufficient by
themselves to find that the appellant's due process rights were violated; rather, these
factors should be considered together in a balancing test weighing the conduct of the
State and the appellant contributing to the delay." (Citation omitted.) *Threatt*, supra,
282 Ga. App. at 886. "[I]n determining whether an appellate delay violates due
process, prejudice, unlike in the speedy trial context, is not presumed but must be
shown." (Citations and punctuation omitted.) *Glover v. State*, 291 Ga. 152, 155 (3)
(728SE2d 221) (2012).

On appeal, we apply the *Barker* factors to determine whether the trial court
abused its discretion in ruling that Singleton's due process rights were not violated.
See. id. at 887. Nevertheless, "the length of delay that will raise a constitutional
inquiry is dependent upon the peculiar circumstances of the case, and not every delay
in the appeal of a case, even an inordinate delay, will implicate an appellant's due
process rights." (Citation omitted.) *Browning*, supra, 283 Ga. at 532 (2) (b).

Here, even assuming that the more than 10-year delay required the trial court to weigh the first three *Barker* factors in Singleton's favor, he has not shown that the delay prejudiced his ability to assert his arguments on appeal. "Appellate delay is deemed prejudicial when there is a reasonable probability that, but for the delay, the result of the appeal would have been different." (Citation omitted.) *Owens v. State*, 286 Ga. 821, 826 (2) (d) (693 SE2d 490) (2010); see also *Chatman v. Mancill*, 280 Ga. 253, 260 (2) (e) (626SE2d 102) (2006) (prejudice necessary to establish due process violation based upon direct appeal delay is prejudice to defendant's ability to assert his arguments on appeal).

Singleton's sole claim of prejudice is that he was unable to assert on appeal that the State made improper remarks during closing argument by stating that "the Defendant had not refuted the evidence. Closing arguments were not transcribed and neither trial counsel nor the State could remember if that subject was discussed.[4] Nevertheless, the issue was subsequently discussed at trial and the trial court concluded that the State merely commented in closing that "the evidence was

---

[4] We note that trial counsel testified at the new trial hearing that it was not his normal practice to have the entire trial transcribed in felony cases due to the costs incurred in paying a court reporter to take down jury selection and opening and closing arguments.

unrefuted," not that Singleton specifically failed to refute the evidence. Absent a transcript of the closing arguments, we must presume that the trial court's ruling was correct. See *Arnold v. State*, 305 Ga. App. 45, 48 (2) (699 SE2d 77) (2010). Furthermore, this Court has previously construed this type of argument as permissible. See *Turner v. State*, 199 Ga. App. 836, 838 (4) (406 SE2d 512) (1991). Finally, an appellate delay's effect on counsel's memories is not the kind of specific evidence required to show that the delay prejudiced a defendant's appeal. See *Loadholt v. State*, 286 Ga. 402, 406 (4) (687 SE2d 824) (2010). Accordingly, Singleton has failed to offer the specific evidence required to show that the delay prejudiced his appeal. "While we do not approve of the delay occasioned here, we must review each case on its own facts." Id. Since Singleton has not shown that he was prejudiced from the more than 10-year delay, the trial court did not abuse its discretion in ruling that Singleton's due process rights were not violated. See *Glover*, supra, 291 Ga. at 155-156 (3) (absent prejudice trial court did not abuse its discretion in ruling that defendant's due process claim failed).

b.

Singleton argues that his due process rights were violated when the trial court denied his indigency motion. For the reasons that follow, we find no reversible error.

12

In criminal cases, an indigent, on appeal, is entitled as a matter of right to a free copy of the transcript of trial court proceedings in which he has been a party. Motions for new trial and other post-trial motions are part of the proceedings contemplated by this rule. The right to a free transcript arises regardless of whether the indigent defendant was represented by retained counsel at the time of the trial court proceeding for which the transcript is sought.

(Citations and punctuation omitted). *Mitchell v. State*, 280 Ga. 802 (1) (633 SE2d 539) (2006).

Our review of the record shows that, Singleton was in fact deemed indigent for purposes of his new trial motion and appeal, he was appointed counsel to represent him and he was provided with a free copy of his trial transcript. Nevertheless, Singleton retained his own counsel prior to the hearing on his motion for new trial. Following the trial court's denial of his new trial motion, Singleton filed two affidavits of poverty and a new motion to be deemed indigent so that he could proceed on appeal in forma pauperis. The trial court denied the motion, finding that Singleton had declined the services of his approved public defendant and retained his own counsel, and that he was not entitled to a free transcript.

As an indigent defendant, Singleton was entitled to a free transcript of his new trial hearing. Therefore, the trial court erred in denying his motion. See *Mitchell*,

13

supra, 280 Ga. at 802 (1). Nevertheless, it is axiomatic that a defendant must show harm as well as error to authorize a reversal by this Court. See *Dryden v. State*, 316 Ga. App. 70, 73 (1) (728 SE2d 245) (2012). Here, the record clearly shows that Singleton did in fact obtain a copy of his new trial transcript, albeit at his own cost. Moreover, Singleton has failed to show prejudice from the additional appellate delay, if any, between the denial of his motion for new trial and the docketing of his appeal in this Court. As set forth above, this Court must review each case on its own facts. See *Loadholt*, supra, at 406 (4) In the absence of a showing that the outcome of his appeal would have differed, Singleton cannot show that his due process rights were violated by the trial court's error in denying his right to a free transcript of his new trial hearing.

4. Singleton also contends that his trial counsel provided ineffective assistance. We do not agree.

> To establish ineffective assistance of counsel under *Strickland v. Washington*, 466 U. S. 668 (104 S. Ct. 2052, 80 LE2d 674) (1984), a criminal defendant bears the burden of showing that counsel's performance was deficient and that the deficient performance so prejudiced [the] defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different… . The trial court's determination with respect to ineffective

14

assistance of counsel will be affirmed unless its findings are clearly erroneous.

(Citations and punctuation omitted.) *Robinson v. State*, 312 Ga. App. 736, 742 (3) (719 SE2d 601) (2011). Here, Singleton argues that trial counsel was ineffective for failing to object when the trial court held Waters in contempt in front of the jury. As set forth above in Division 2 (b), the trial court did not reversibly err in holding Waters in contempt in front of the jury. Therefore, even assuming that trial counsel's failure to contemporaneously object constituted deficient performance, Singleton cannot show that the outcome of his trial would have differed but for his trial counsel's failure to object. Accordingly, the trial court did not err in denying Singleton's motion for new trial based on his claim of ineffective assistance of counsel.

*Judgment affirmed. Barnes, P. J., and Ray, J., concur.*