A07A1578. BROWN v. THE STATE.
(650 SE2d 780)

BERNES, Judge.

A Coffee County jury convicted Curtis Andrew Brown, Jr. of two counts of aggravated assault. Brown appeals, contending that there was insufficient evidence to convict him. He further contends that the trial court should have excluded the testimony of two sheriff's deputies comparing tire tracks discovered at the scene of the crime with the tire treads on Brown's vehicle. For the reasons set forth below, we affirm.

On appeal from Brown's criminal conviction, we construe the evidence in the light most favorable to the jury verdict, and Brown no longer enjoys the presumption of innocence. *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004). Viewed in this manner, the evidence adduced at trial reflects that the victims were an elderly married couple who maintained a bicycle shop at their home in Coffee County. In February 2006, Brown drove one of his friends to the victims' home to discuss selling a bicycle. Following a discussion over the sale, the victim husband pulled out his wallet and paid Brown's friend cash for the bicycle. According to Brown's friend, the wallet looked "thick." The sale transaction occurred in Brown's presence as he sat in his vehicle, an older model green Chevrolet Blazer.

A few days later between 12:30 and 1:00 p.m., Brown drove up to the victims' home in the same green Chevrolet Blazer, this time alone. He knocked on the kitchen door and inquired about purchasing a bicycle. The husband invited Brown inside and asked him to wait while he got dressed in order to go outside and show Brown some bikes. The husband then went to his bedroom to get dressed, while his wife remained in the kitchen with Brown.

After the husband left the kitchen, Brown grabbed the wife, held his hand to her neck, and screamed, "Give me your money or I'll cut her throat." Brown then headed toward the bedroom where the husband was getting dressed, knocking down the wife in the process. According to the husband, Brown was holding a knife or some other type of sharp object as he entered the bedroom. The husband had two firearms in the bedroom — a .308 rifle and a .22 rifle — and he reached for the .308 rifle as Brown entered. At the same time, Brown shoved the husband, grabbed the .22 rifle, and began to hit the husband with the rifle barrel. A struggle ensued over the .22 rifle, and the husband fell to the floor. Brown stood over the husband, pointed the rifle at him, and tried to shoot him, but could not get the safety off. The husband then kicked Brown in the crotch, after which Brown turned, ran, jumped into his green Chevrolet Blazer, and fled from the scene. The wife immediately called 911.

Approximately two hours later, Brown was apprehended in a vehicle matching the description given by the victims. Law enforcement recovered a pocket knife and set of box cutters from the vehicle. That same day, sheriff's deputies presented a photo lineup separately to each victim, and both victims identified Brown as the perpetrator. The deputies were able to obtain tire impressions from outside the victims' home, and the impressions indicated that the vehicle used in the incident had the same tread pattern as the tires on Brown's vehicle.

Brown subsequently was indicted and tried on two counts of aggravated assault. Both victims testified at trial, describing what had occurred and identifying Brown in court as the person who had entered their home and attacked them. The state also introduced photographs of the tread marks found on the victims' driveway and the tread patterns on the tires of Brown's vehicle, and sheriff's deputies testified about the similarities between the two. Brown did not testify or present any witnesses on his own behalf. Following the close of evidence, the jury convicted Brown on both counts.

1. Brown asserts that there was insufficient evidence to convict him of aggravated assault. "A person commits the offense of aggravated assault when he uses a deadly weapon to commit an act which places another in reasonable apprehension of immediately receiving a violent injury." *Jackson v. State*, 251 Ga. App. 578, 579 (1) (554 SE2d

768) (2001). See OCGA § 16-5-21 (a) (2). Count 1 of the indictment averred that Brown committed aggravated assault in that he "did unlawfully make an assault upon the person of [the victim wife] with a knife, a deadly weapon." Count 2 averred that Brown committed the charged offense by "mak[ing] an assault upon the person of [the victim husband] with a firearm, by pointing a .22 caliber rifle at him."

Viewed in the light most favorable to the verdict, the evidence set forth above was more than sufficient to enable a rational trier of fact to find Brown guilty of both counts of aggravated assault beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). In this regard, the victims' testimony describing what happened and identifying Brown as the perpetrator clearly was enough to justify Brown's conviction on both counts. See OCGA § 24-4-8 ("The testimony of a single witness is generally sufficient to establish a fact."); *Williams v. State*, 272 Ga. 828 (1) (537 SE2d 39) (2000) (eyewitness testimony sufficient to sustain conviction).

Nevertheless, Brown contends that a discrepancy between the victims' description of what he allegedly was wearing at the time of the offense, and the clothes he was found to be wearing when apprehended, demonstrates that he was improperly identified as the perpetrator. Aside from the obvious fact that Brown could have changed clothes between the time when the crime occurred and when he was apprehended approximately two hours later, the accuracy of an eyewitness identification is for the jury to determine, not this Court. *Wells v. State*, 281 Ga. 253, 254 (1) (637 SE2d 8) (2006).

Brown also emphasizes that in a prior written statement used for impeachment at trial, one of the witnesses stated that Brown came over to his home on the day of the incident between 1:00 and 1:15 p.m. According to Brown, the witness' written statement demonstrated that it was "physically impossible" for him to have committed the charged offenses, since the offenses occurred between 12:30 and 1:00 p.m. in a different area of the county. We disagree for two primary reasons. First, the witness testified at trial that Brown actually came over to his home around 2:00 p.m., and any inconsistencies between the witness' in-court testimony and his prior written statement were a matter for the jury to consider and resolve. *Coleman v. State*, 284 Ga. App. 811, 812-813 (1) (644 SE2d 910) (2007). Second, even if the time frame set out in the witness' prior written statement was accepted as true by the jury, it did not render Brown's commission of the charged offenses an impossibility, since a sheriff's deputy testified that Brown could have gotten to the witness' home in 15 minutes or less if Brown had been speeding from the crime scene. Brown thus has failed to point to any basis for overturning his convictions on sufficiency grounds.

2. Brown contends that the trial court erred in allowing two sheriff's deputies to testify concerning the similarities between the tire tracks discovered at the victims' home and the tread pattern on the tires of Brown's vehicle. At trial, the deputies testified that the impressions left by the tire tracks were similar to or the same as the tread pattern on the tires, but noted that the tracks could have come from any vehicle having the same size, type, and brand of tire. Relying upon *Harper v. State*, 171 Ga. App. 63 (318 SE2d 502) (1984), a case involving footprint evidence, Brown argues that the deputies' testimony was too generalized to have probative value because it did not exclude the possibility that another car left the tracks. He contends that under *Harper*, the deputies could not testify about the similarities unless there was some peculiarity in the tire tracks to clearly identify them as uniquely coming from Brown's vehicle, which would include a showing of "overall uniqueness in wear pattern" and "several individual points of identification." Id. at 64. As such, Brown contends that the deputies' testimony should have been held inadmissible.

We do not agree. As an initial matter, *Harper* is not relevant to the question at hand because it did not address the admissibility of certain evidence, but instead addressed whether certain already admitted evidence was sufficient to sustain the verdict. Nor does *Harper* otherwise apply in this case. In *Harper*, we stated that where the *only* evidence presented at trial of the accused's guilt is footprint evidence, that evidence cannot by itself sustain a conviction "unless there is some peculiarity in the tracks to clearly identify them as belonging to the accused." (Citation and punctuation omitted.) *Harper*, 171 Ga. App. at 64. Analogizing to the context of tire tracks, the peculiarity requirement imposed by *Harper* would apply only in the rare context where the sole evidence against the accused was tire track evidence, which clearly was not the situation here. As such, *Harper* posed no obstacle to the deputies testifying more generally that the tread marks discovered at the victims' home had the same or similar tread pattern, size and width as the tires on Brown's vehicle. See *Calloway v. State*, 144 Ga. App. 457 (2) (241 SE2d 575) (1978). The trial court therefore committed no error in allowing the deputies' testimony.

*Judgment affirmed. Blackburn, P. J., and Ruffin, J., concur.*

DECIDED AUGUST 6, 2007.

*Keith B. Harkleroad*, for appellant.

*Richard E. Currie, District Attorney, John A. Rumker, Assistant District Attorney*, for appellee.