A07A1332. CAIL v. THE STATE.
(652 SE2d 190)

ELLINGTON, Judge.

A Tattnall County jury found Patrick Cail guilty beyond a reasonable doubt of aggravated assault, OCGA § 16-5-21 (a) (2), based upon an altercation that occurred while Cail was an inmate at the Georgia State Prison in Reidsville. Cail appeals from the denial of his motion for new trial. For the following reasons, we affirm.

1. Cail challenges the sufficiency of the evidence and contends the jury's verdict was contrary to the weight of the evidence presented. When a criminal defendant challenges the sufficiency of the evidence supporting his or her conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the

prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979). It is the duty of the jury, not this Court, to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the evidence. Id. "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." (Citation and punctuation omitted.) *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001). Viewed in this light, the record reveals the following facts.

On March 7, 1994, Cail and his co-defendant, Michael Wilson, were incarcerated at Georgia State Prison. At approximately 8:15 that evening, Wilson became involved in an altercation with another inmate during which Wilson threw bleach in the face of the inmate, then repeatedly stabbed him. According to the victim and another inmate who witnessed the attack, Cail walked over to the victim and joined the attack. Cail had a metal knife or shank in his hand and repeatedly stabbed the victim in the head and chest. According to the victim, an officer at the prison witnessed the attack but did not intervene.[1] After the attack, Cail and Wilson ran through a door into another area of the prison. The victim testified that, as he lay on the floor after the attack, he thought he saw a different inmate pick up the weapons used by Cail and Wilson. The victim was seriously injured as a result of the attack.

Cail denied any involvement in the attack and testified at trial that he was in a different building when the attack occurred. Cail also presented four fellow inmates as alibi witnesses, but the testimony of some of the witnesses regarding Cail's location at the time of the attack was not entirely consistent with that of the other witnesses. Moreover, a fifth inmate who was called by the defense testified that, shortly before the attack, he saw Cail and Wilson leaving the gym at the same time with a group of men, and he admitted that he did not have any personal knowledge about whether Cail was involved in the attack.

Wilson also testified at trial and admitted throwing bleach in the victim's face and stabbing him, but claimed that the victim had threatened and attacked him and that he was acting in self-defense. Wilson testified that Cail did not participate in the attack. During

---

[1] The transcript shows that the officer, Earl Johnson, was subpoenaed by the State, but did not have transportation to the trial. After advising the court that Officer Johnson would arrive in 30 to 40 minutes, the State rested subject to calling Officer Johnson as a witness when he arrived. The transcript is silent as to whether Officer Johnson arrived while the trial was still in progress, but shows that neither the State nor either defendant called him as a witness.

closing argument, Cail's trial counsel argued that this was a case based upon mistaken identity and that Cail was not present during the attack. The trial court gave a comprehensive jury charge, including instructions on alibi as a defense and the State's burden of proving the identity of the perpetrator beyond a reasonable doubt.

(a) On appeal, Cail argues that the evidence was insufficient in part because the State failed to present the testimony of Officer Johnson, whom Cail characterizes as a "necessary witness." He also claims the victim's identification of him as one of the two assailants was unreliable, arguing that the victim could not see the second attacker because Wilson had thrown bleach in his eyes. As shown above, however, both the victim and another eyewitness testified that Cail attacked and stabbed the victim with a sharp weapon. "The testimony of a single witness is generally sufficient to establish a fact." OCGA § 24-4-8. In addition, "the accuracy of an eyewitness identification is for the jury to determine, not this Court." (Citation omitted.) *Brown v. State*, 287 Ga. App. 115, 117 (1) (650 SE2d 780) (2007). It is the role of the jury to judge the credibility of the witnesses, weigh the evidence, and determine whether the State proved the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. at 319 (III) (B); *Singleton v. State*, 259 Ga. App. 184, 185 (577 SE2d 6) (2003). Even though Officer Johnson did not testify at trial, the evidence presented was sufficient to identify Cail as the assailant and to establish the essential elements of the crime of aggravated assault. OCGA § 16-5-21 (a) (2);[2] *Clark v. State*, 275 Ga. 220, 221 (1) (564 SE2d 191) (2002); *Brown v. State*, 287 Ga. App. at 117 (1).

(b) Cail also complains that the State failed to introduce into evidence the weapon he allegedly used during the attack. There was evidence, however, that another inmate picked up the weapon immediately after the attack, which could explain why the weapon was not recovered and introduced at trial. Even without that evidence, both the victim and an eyewitness testified that Cail used a metal knife or shank to repeatedly stab the victim. Therefore, the evidence was sufficient to show that the aggravated assault was accomplished through the use of an "object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." OCGA § 16-5-21 (a) (2). See *Williams v. State*, 205 Ga. App. 397, 398 (3) (422 SE2d 438) (1992) (the direct testimony of witnesses concerning the type of weapon used by the defendant was

---

[2] "A person commits the offense of aggravated assault when he or she assaults . . . [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." OCGA § 16-5-21 (a) (2).

sufficient to support his conviction for aggravated assault and possession of a firearm by a convicted felon).

(c) In addition, Cail argues that the testimony of numerous alibi witnesses outweighed the State's evidence. Although Cail presented four alibi witnesses, they presented inconsistent alibis for Cail, and all admitted to having been convicted of various felonies, among them aggravated assault, armed robbery, kidnapping with bodily injury, arson in the first degree, and murder.

When the State and defendant present conflicting evidence at trial, the jury is solely responsible for judging the credibility of the witnesses, resolving conflicts in the evidence, and weighing the evidence. *Jackson v. Virginia*, 443 U. S. at 319 (III) (B); *Singleton v. State*, 259 Ga. App. at 185. Thus, the jury was authorized to conclude that the alibi witnesses were not credible and, consequently, to reject their testimony in favor of evidence offered by the State which established Cail's involvement in the crime. *Johnson v. State*, 276 Ga. 368, 370 (1) (578 SE2d 885) (2003); *Singleton v. State*, 259 Ga. App. at 185; see *Henderson v. State*, 146 Ga. App. 114, 116 (3) (245 SE2d 437) (1978) ("Generally[,] a witness is subject to impeachment by proof of a conviction of a felony or a crime involving moral turpitude.") (citation omitted).

Having reviewed the record in the light most favorable to the jury's verdict, we find the evidence presented was sufficient for the jury to find Cail guilty beyond a reasonable doubt of aggravated assault as charged in the indictment. *Clark v. State*, 275 Ga. at 221 (1).

2. Cail complains that the court failed to adequately instruct the jury on aggravated assault, arguing that the court did not define assault as an underlying element of aggravated assault and did not instruct the jury that he had to have attempted a violent injury on the victim. The record shows, however, that the court properly charged the jury on aggravated assault.[3] This argument lacks merit.

3. Cail contends that he received ineffective assistance of counsel at trial. According to Cail, counsel failed to adequately prepare for trial, investigate the scene at which the altercation allegedly occurred, consult with him about trial strategy, cross-examine or impeach witnesses, and move for a continuance when Officer Johnson

---

[3] The court instructed the jury as follows:
Aggravated assault is defined as follows. An assault is an attempt to commit a violent injury to the person of another or an act which places another person in a reasonable apprehension of immediately receiving a violent injury. A person commits aggravated assault when he assaults another person with a deadly weapon or with any object, device or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury.

was unavailable.[4] Although Cail concedes that any one of counsel's alleged omissions could be deemed valid tactical decisions, he argues that, "when viewed as a whole," counsel's performance was deficient.

> In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct. [As the appellate court, we] accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.

(Citations and punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 75-76 (586 SE2d 313) (2003). Absent counsel's testimony to the contrary, counsel's actions during trial are presumed to result from strategic decisions. *Holmes v. State*, 273 Ga. 644, 648 (5) (c) (543 SE2d 688) (2001). "As a general rule, matters of reasonable tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel." (Citation and punctuation omitted.) *Grier v. State*, 273 Ga. 363, 365 (4) (541 SE2d 369) (2001). Moreover, "although the combined effects of trial counsel's errors should be considered together as one issue, it remains the case that [Georgia] does not recognize the cumulative error rule." (Citations and punctuation omitted.) *Waits v. State*, 282 Ga. 1, 6 (4) (644 SE2d 127) (2007).

In this case, the transcript of the motion for new trial hearing shows that Cail's appellate counsel did not question trial counsel or present any other evidence or argument in support of the motion; instead, counsel relied on the trial transcript and the motion for new trial brief that she had filed with the trial court. Although Cail asserts that trial counsel failed to adequately prepare for trial or consult with him about trial strategy, his claim is not supported by the record,

---

[4] Cail also contends on appeal that counsel was ineffective for failing to call witnesses, make a motion for change of venue, and renew a motion for mistrial. None of these contentions was supported by evidence, argument, or authority in the court below in conjunction with his motion for new trial. Therefore, these alleged errors have been waived. *Moore v. State*, 279 Ga. 45, 47-48 (8) (609 SE2d 340) (2005). Moreover, even if these contentions had not been waived below, Cail failed to present any argument or authority in support of these allegations on appeal. Thus, these alleged errors are deemed abandoned. See Court of Appeals Rule 25 (c) (2).

which shows that counsel filed pretrial motions and requests to charge, cross-examined witnesses for the State and Wilson, presented the testimony of Cail and six defense witnesses, and vigorously argued an alibi defense to the jury. Cail has failed to identify any motion, defense, or evidence that counsel failed to present on his behalf. Further, there is no evidence in the record to support a finding that counsel failed to investigate the scene of the crime, and, even if counsel failed to do so, Cail has failed to demonstrate how he was prejudiced thereby. The transcript shows that counsel questioned the witnesses about the layout of the prison and where they were at the time of the crime in an effort to support Cail's alibi defense. Cail has failed to show any deficiencies in counsel's knowledge of the crime scene that affected the outcome of the trial.

As for Cail's complaint that counsel failed to adequately cross-examine witnesses, Cail has not cited to any evidence which could have been used to impeach these witnesses, nor does he suggest any other questions which counsel should have asked these witnesses in order to attack their credibility. Further, "[t]he scope of cross-examination is grounded in trial tactics and strategy, and will rarely constitute ineffective assistance of counsel." (Footnote omitted.) *Simpson v. State*, 277 Ga. 356, 359 (4) (b) (589 SE2d 90) (2003).

Cail also complains that trial counsel should have moved for a continuance when counsel discovered that a necessary witness, Officer Johnson, was unavailable to testify at trial. Although the State listed Officer Johnson on the indictment as a possible witness in the case, he did not testify at trial. See footnote 1, supra. Given that Officer Johnson was subpoenaed for trial as a prosecution witness and Cail failed to make any proffer in the court below that Officer Johnson's testimony would have been favorable to his defense, Cail has failed to carry his burden of showing that he was prejudiced by counsel's failure to move for a continuance. *Wells v. State*, 281 Ga. 253, 255 (2) (a) (637 SE2d 8) (2006). Further, because Cail did not subpoena counsel to appear at the hearing on the motion for new trial, Cail has failed to show that counsel's failure to move for a continuance was the result of an unintentional oversight instead of a deliberate strategic decision. *Garrett v. State*, 196 Ga. App. 872, 873 (1) (397 SE2d 205) (1990).

Accordingly, Cail has failed to demonstrate by the record that the court erred in denying his claim that he received ineffective assistance of counsel at trial. *Holmes v. State*, 273 Ga. at 648 (5) (c); *Garrett v. State*, 196 Ga. App. at 873 (1).

4. Cail contends the trial court erred in failing to grant a mistrial based upon an allegedly improper statement by the prosecutor during closing arguments.

The prosecutor stated that "Georgia State Prison, as you well know, is a place where the most violent of all criminals are placed." Wilson's counsel objected to the statement as unsupported by evidence and highly prejudicial, and he asked the court to instruct the jury to disregard the statement, to admonish the prosecutor, or, in the alternative, to declare a mistrial. Cail's counsel concurred in the objection. The court sustained the objection, instructed the jury to disregard the comment, and denied the motion for a mistrial. Neither counsel objected to the curative instruction or renewed the motion for a mistrial.

Pretermitting whether the prosecutor's statement was improper given the evidence presented about some of the witnesses' violent criminal histories, counsel's failure to renew his objection to the prosecutor's statement or the motion for mistrial after the court gave the curative instruction waives any error on appeal. *Whitaker v. State*, 246 Ga. 163, 167 (11) (269 SE2d 436) (1980); *Barksdale v. State*, 161 Ga. App. 155, 158 (4) (291 SE2d 18) (1981).

5. Cail contends that the 11-year delay in the appeals process violated his constitutional due process rights. It is undisputed that 11 years passed from the date Cail initially filed a motion for new trial and the trial court's denial of that motion.

> [W]hile there is no Sixth Amendment right to a speedy appeal, due process concepts necessarily become implicated when substantial delays are experienced during the criminal appellate process. . . . [T]he procedures that make up the [appellate] process must comport with the demands of the Due Process and Equal Protection Clauses of the Constitution. . . . [T]he balancing test adopted for speedy trial violations in *Barker v. Wingo*[5] should be applied to situations in which a defendant claims that a delay in the appellate process is violative of due process of law. The four facts enunciated in *Barker* . . . are the length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.

(Citations, punctuation and footnotes omitted.) *Butler v. State*, 277 Ga. App. 57, 63-64 (5) (625 SE2d 458) (2005). See *Chatman v. Mancill*, 280 Ga. 253, 256-257 (2) (a) (626 SE2d 102) (2006) (the analytical framework of *Barker* should be applied to claims asserting due process violations based upon inordinate delays in post-conviction proceedings); *Threatt v. State*, 282 Ga. App. 884, 886 (640 SE2d 316)

---

[5] *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972).

(2006) (accord). Regarding the fourth factor, "the prejudice necessary to establish a due process violation based on post-conviction direct appeal delay is prejudice to the ability of the defendant to assert his arguments on appeal and, should it be established that the appeal was prejudiced, whether the delay prejudiced the defendant's defenses in the event of retrial or resentencing." (Citations and footnote omitted.) *Chatman v. Mancill*, 280 Ga. at 260 (2) (e). Therefore, the test for assessing prejudice when there has been a delay in post-conviction proceedings is whether "there is a reasonable probability that, but for the delay, the result of the [proceedings] would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Citations and punctuation omitted.) Id. at 260-261 (2) (e).

Applying this analysis to the instant case, the record shows that Cail's trial counsel originally filed a motion for new trial in December 1995, raising the general grounds. Subsequently appointed appellate counsel filed an amended motion for new trial on January 4, 2007, asserting the grounds enumerated above. The same day, the trial court conducted a hearing and denied the motion. As the State concedes, the delay of over 11 years before the court ruled on Cail's motion for new trial constitutes an inordinate delay in the proceedings. The reason for the delay is unclear from the record, but the record does indicate that Cail wanted to challenge his conviction and did not abandon that right.

Pretermitting whether the record establishes the first three factors of the *Barker* analysis, however,

> [Cail] cannot show that he was prejudiced by the delay, without which prejudice his claim of due process violations arising from an undue delay in his appeal must fail. As discussed above, the enumerations [Cail] has raised on appeal are without merit; there can therefore be no prejudice in delaying a meritless appeal.

(Citations omitted.) *Butler v. State*, 277 Ga. App. at 64 (5). Moreover, there is no basis for finding that Cail's ability to assert his arguments on appeal was prejudiced by the delay or that the result of the appeal would have been different but for the delay. *Chatman v. Mancill*, 280 Ga. at 260-262 (2) (e).

Accordingly, Cail's due process claim must fail.

*Judgment affirmed. Andrews, P. J., and Adams, J., concur.*

DECIDED SEPTEMBER 13, 2007.

*Tina E. Maddox*, for appellant.
*Tom Durden, District Attorney, Sandra Dutton, Assistant District Attorney*, for appellee.