**FOURTH DIVISION**
**DOYLE, P. J.,**
**COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**May 15, 2019**

# In the Court of Appeals of Georgia

A19A0492. ROGERS v. THE STATE.

COOMER, Judge.

Following a jury trial, Treston Dartrey Rogers was convicted of armed robbery. Rogers filed a motion for new trial, which the trial court denied. Rogers appeals, arguing that the evidence was insufficient to support his conviction for armed robbery and that the trial court erred in finding that he was properly advised of required *Miranda*[1] warnings prior to questioning. Finding no reversible error, we affirm.

1. Rogers contends that the State failed to produce sufficient evidence to support his conviction for armed robbery. In reviewing the sufficiency of the evidence, "[t]he appellant no longer enjoys a presumption of innocence, and an appellate court determines only the legal sufficiency of the evidence and does not

---

[1] *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

weigh the evidence or assess the credibility of the witnesses." *Salazar v. State*, 326 Ga. App. 627, 627 (1) (757 SE2d 224) (2014) (footnote omitted). "Our limited review . . . leaves to the jury the resolution of conflicts in the testimony, the weight of the evidence, the credibility of witnesses, and reasonable inferences to be made from basic facts to ultimate facts." *Menzies v. State*, 304 Ga. 156, 160 (II) (816 SE2d 638) (2018) (citations and punctuation omitted). "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." *Wade v. State*, 305 Ga. App. 819, 821 (701 SE2d 214) (2010) (citation omitted). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Salazar*, 326 Ga. App. at 627 (1) (footnote omitted).

Viewed in the light most favorable to the verdict, the record shows that the victim worked at a store that sells cell phones and accessories. The victim had a profile on a dating application called Jack'd. Rogers used the profile "I'm Daddy" on Jack'd to sell marijuana. Rogers went to the store where the victim worked to buy a phone charger. After Rogers left the store, the victim received a message on the Jack'd application from Rogers telling the victim that Rogers had met him in the

2

store. The victim remembered who Rogers was, and they continued to message back and forth through the Jack'd application.

Rogers and the victim arranged to meet at the victim's house. The victim sent Rogers his address, and Rogers showed up at the victim's house. The victim knew that Rogers was outside of his house because Rogers sent the victim a message saying he was there and the victim looked through the window and saw him. The victim recognized Rogers from seeing him at the store. Rogers had another person with him, a man who the victim did not recognize. When the victim answered the door, Rogers asked him if his friend could use the bathroom. After the other man went upstairs to use the bathroom, Rogers jumped on the victim. The victim had turned to walk to the kitchen, and Rogers grabbed him from behind by his shirt and turned him around. The other man came back downstairs and started hitting the victim with a handgun. The man who had gone upstairs told the victim to stay still on the floor and not to move. Rogers went from room to room, taking things. The other man stayed with the victim and pointed the gun at his head. Rogers went upstairs, and when he came back downstairs he had the victim's Nintendo 3DS video game console, Lenovo laptop, and iPhone 6. Rogers and the other man also took the victim's Nintendo 2DS game console and cash belonging to the victim's cousin. After the victim gave Rogers his

3

phone password, Rogers and the other man left. However, they returned immediately because Rogers had left his book bag, which contained the items taken from the victim's room, on the victim's couch.

After Rogers and the other man left the house again, the victim went to a neighbor's house, and the neighbor called the police. With the victim's help, a detective with the Norcross Police Department set up a fake profile on Jack'd and messaged the profile used by Rogers. Rogers responded, and the detective met Rogers at a store and took him to the Norcross Police Department for questioning. While he was in custody, Rogers gave the detective permission to look at his cell phone. After the detective discovered that the victim's house was shown as a "frequent location" on Rogers's phone, Rogers admitted going to the victim's house. Rogers stated that his role was only to show his face to the victim so that he would open the door, and that he then walked away and was not involved in anything else that happened.

Rogers also admitted that someone gave him an iPhone to sell, and that he had sold it at a kiosk in a grocery store. While Rogers was being questioned, investigators learned that the victim's iPhone had been sold at the same kiosk shortly after the robbery, and that the transaction receipt showed that Rogers's identification had been used to sell the iPhone. Rogers eventually admitted that the iPhone he sold probably

belonged to the victim. After getting a search warrant for Rogers's cell phone, the detective found that he had also researched how to reset a Lenovo laptop.

Rogers was charged with armed robbery and first degree home invasion. At trial, Rogers moved for a directed verdict on the home invasion charge. The trial court initially denied the motion. However, after the jury convicted Rogers of both charges, Rogers renewed his motion for a directed verdict on the home invasion charge and the trial court granted the motion. Rogers then filed a motion for a new trial, which the trial court denied.

OCGA § 16-8-41 provides that "[a] person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon." Rogers contends that there was no credible testimonial evidence that he was the person who committed the armed robbery, and that his possession of the stolen iPhone is not sufficient to prove that he had the intent to commit armed robbery.

We disagree.

Rogers argues that the victim's testimony is not credible because when shown photographs of suspects by investigators, the victim identified someone else as the

person who entered his home and robbed him at gunpoint. However, at trial, the victim identified Rogers as the person who came to his house and robbed him. The testimony of a single witness is generally sufficient to establish a fact. OCGA § 24-14-8. Moreover, the jury, not this Court, resolves conflicts in the testimony and weighs the evidence. *Cail v. State*, 287 Ga. App. 547, 548 (1) (652 SE2d 190) (2007). We have reviewed the record and conclude that the evidence presented at trial authorized the jury to find Rogers guilty beyond a reasonable doubt of armed robbery.

2. Rogers contends that the trial court erred in finding that he was properly advised of required *Miranda* warnings prior to questioning. Rogers filed a motion to suppress statements made by him to law enforcement officers while in custody. The trial court held a *Jackson-Denno*[2] hearing and reviewed portions of the video recording of the interview of Rogers by law enforcement officers. The trial court found that Rogers was given his *Miranda* warning as required and that Rogers made the statement freely and willingly without any hope of benefit or fear of injury. Consequently, the trial court allowed the entire video recording of Rogers's interview to be played for the jury at the trial.

---

[2]*See Jackson v. Denno*, 378 U. S. 368 (84 SCt 1774, 12 LEd2d 908) (1964).

6

*Miranda* warnings are intended to preserve a defendant's Fifth Amendment right against self-incrimination and must be administered to an accused who is in custody and subject to interrogation. Only if the defendant knowingly and intelligently waives his rights under *Miranda* are any of his custodial statements admissible in the prosecution's case-in-chief.

*Benton v. State*, 302 Ga. 570, 573 (2) (807 SE2d 450) (2017) (citations and punctuation omitted). "We look to the totality of the circumstances to determine whether a defendant has waived his rights under *Miranda* and whether his incriminating statements to the police were voluntary." *Id.* at 572-573 (2) (citation and punctuation omitted). "When reviewing a trial court's decision on a motion to suppress evidence of a defendant's custodial statement to investigators, we must accept the factual findings and credibility determinations of the trial court unless clearly erroneous." *Id.* at 572 (2) (citation and punctuation omitted). "But where controlling facts are not in dispute, such as those facts discernible from a videotape, our review is de novo." *Id.* (citations and punctuation omitted).

Before Rogers was questioned at the Norcross Police Department, a detective pulled a *Miranda* card out of his wallet and read it to Rogers. On appeal, Rogers

7

contends that the detective read the *Miranda* card incorrectly. Rogers claims that the the detective stated:

> you've the right to remain silent, anything you say can and will be used against you in a court of law; you have the right to an attorney and have your attorney present while being questioned; if you want an attorney and cannot afford one, one will be appointed if you have any questions. Do you understand?

Rogers argues that the way the detective read the card linked the appointment of counsel to some future point in time after the police interrogation because the detective said that an attorney would be appointed only if Rogers had any questions. However, Rogers misstates what the detective read from his card. Our review of the video of the detective reading the *Miranda* card shows that the detective said:

> you've the right to remain silent, anything you say can and will be used against you in a court of law; you have the right to an attorney and have your attorney present while you're being questioned; if you want an attorney and cannot afford one, one will be appointed for you before any questioning. Do you understand?

The way that the detective read the card made it clear that Rogers had the right to have an attorney present while being questioned and that if Rogers wanted an attorney and could not afford one, one would be appointed before any questioning.

8

Rogers argues that the detective's failure to present him with a written waiver form to initial and sign amounted to a violation of his *Miranda* rights. However, the absence of a written waiver form is not conclusive on the question of whether *Miranda* warnings have been properly administered. *See Stovall v. State*, 236 Ga. 840, 841 (1) (225 SE2d 292) (1976). Even in the absence of a written waiver form, a trial court is authorized to find, based on the totality of the circumstances, that a defendant has waived his rights under *Miranda*. *See id.*

Rogers contends that the detective dismissed the importance of advising Rogers of his *Miranda* rights and that Rogers was a very young man who had never been arrested before and had no knowledge of the criminal process. Rogers further contends that the detective rushed through the process of advising him of his *Miranda* rights as if it were a procedural nuisance. Rogers cites *Clay v. State,* 290 Ga. 822 (725 SE2d 260) (2012), in support of his argument that he did not knowingly and intelligently waive his *Miranda* rights because the detective rushed through the process of advising him of those rights. In *Clay*, the Supreme Court found that its review of a videotape supported the trial court's findings that an investigator read the *Miranda* warnings "in such a super-speed manner that the warnings likely could not have been identified as anything more than gibberish without having a prior

9

familiarity with *Miranda*." *Clay*, 290 Ga. at 825 (1) (A) (2). Based on our review of the video of the detective reading the *Miranda* warnings to Rogers, we find that, unlike in *Clay*, the detective's reading of the *Miranda* warning was clearly and audibly articulated using a reasonable, intelligible cadence. After the detective read the *Miranda* warning and asked Rogers if he understood, Rogers nodded his head affirmatively and stated, "yeah." The detective then began questioning Rogers. The record supports the trial court's finding that Rogers was given his *Miranda* warning as required and that he made his statement freely and willingly. Accordingly, the trial court did not err in finding that Rogers was properly advised of his *Miranda* rights prior to questioning.

*Judgment affirmed. Doyle, P. J., and Markle, J., concur.*