**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**MCMILLIAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**November 18, 2019**

# In the Court of Appeals of Georgia

A19A2434. BIRDSONG v. THE STATE.

PHIPPS, Senior Appellate Judge.

Following a jury trial, Thomas Edward Birdsong was found guilty of armed robbery (OCGA § 16-8-41). He appeals from the denial of his amended motion for new trial, contending that he abandoned his effort to commit the crime and, thus, that the evidence was insufficient to sustain his conviction. For the reasons that follow, we affirm.

We review the evidence in the light most favorable to the prosecution, under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979), to discern whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. We do not judge

witness credibility or weigh the evidence, nor do we resolve evidentiary conflicts, as those matters are for the jury.

The evidence adduced at trial shows that in late November or early December 2012, Birdsong had lunch at the home of a former co-worker, Jamar Terrell. Marcus Rutledge and another friend of Birdsong's, who was not identified, were also there. The four began talking about robbing a particular Wells Fargo Bank branch.[1] The unidentified fourth man decided not to participate, but Birdsong offered to supply guns and provided Terrell and Rutledge with a 9-millimeter handgun and a shotgun to be used in the robbery. Birdsong also helped plan the robbery. He was to be the getaway driver and keep a lookout for police, honking the horn to alert the other men if he saw law enforcement approaching. He developed the idea to have Rutledge and Terrell enter the bank from separate locations, and he set a nearby Citgo gas station as the location where he would pick them up after the robbery. He also came up with an idea to report the shotgun, which belonged to his brother, as stolen after the robbery. All three men met several times to travel to and scope out the location of the

---

[1] Terrell and Rutledge both pled guilty to armed robbery, and both testified at Birdsong's trial.

robbery beforehand. The men agreed to split the proceeds after the robbery, and Birdsong was to receive a one-third share.

On the day of the robbery, the men drove in two cars, one belonging to Birdsong and the other to Terrell. They parked Terrell's car at the Citgo and traveled to a Wal-Mart in Birdsong's car. All three men went into the Wal-Mart and Rutledge stole ammunition for their guns. Birdsong then drove them back toward the bank. He dropped Terrell off in front of a pizza restaurant near the bank, and he dropped Rutledge off on the drive-thru side, as they had planned. Birdsong was to wait for the men back at Citgo, near Terrell's parked car.

Rutledge and Terrell then walked into the bank wearing masks and brandishing the guns. They demanded money from the teller and forced everyone to lie on the floor and put their hands behind their heads. A teller put money in bags, as directed. Rutledge grabbed the bags, and he and Terrell fled with more than $10,400. Terrell testified that they ran "to the Citgo where Thomas Birdsong would be waiting to drive us away." When they got to the Citgo parking area where they had planned to meet, Birdsong was not there. Rather, he was sitting in his car at the Citgo gas pumps. They tried to signal him, but he was looking away, so they instead got into Terrell's car. As they drove away, they saw that Birdsong was following them in his vehicle. The teller

3

had slipped a tracking device into a bag of cash and the police gave chase, but Terrell and Rutledge abandoned their car and fled on foot. Police recovered a shotgun, two bags of money, and a mask in or near the abandoned vehicle. Police tracked Terrell down using his car registration, and learned of Rutledge and Birdsong through him. The police gave Birdsong's photograph and car description to media outlets. Following the broadcasts, Birdsong turned himself in to police.

In a police interview, a video of which was played for the jury, Birdsong told police that he discussed the bank robbery with the other men while they were all outside the bank, but he denied knowing when the robbery would occur. He said the plan was for him to be the getaway driver, and he told police where he was supposed to wait. He said that the other men "wanted me to be the watch out man," and that he thought about it but begged off at the "last movement" because he was afraid. He told police he followed the men to a store next to the bank and that while they entered the bank, he went into the store for snacks. When he emerged, he saw police surrounding the bank, at which point he "kn[e]w they did it." He said he then drove away from the scene.

Birdsong argues that the evidence is insufficient to sustain his conviction because it shows that he abandoned his effort to commit the crime. He cites OCGA

§ 16-4-5 (a), which provides, in part, that "[w]hen a person's conduct would otherwise constitute *an attempt to commit a crime* under Code Section § 16-4-1, it is an affirmative defense that he abandoned his effort to commit the crime[,] . . . manifesting a voluntary and complete renunciation of his criminal purpose." (Emphasis supplied.)[2]

As outlined above, although Birdsong told police that he begged off "at the last movement[,]" there also was testimony that he was still waiting at the Citgo gas station when the crime was complete and the other men ran from the bank, even though he was not parked at the agreed-upon getaway spot. Further, there was testimony that Birdsong followed the other men in his car as they fled the scene. Although Birdsong's evidence was in conflict with other evidence, the weighing of evidence and the judging of witness credibility are matters for the jury, not for this Court. *Rogers v. State*, 350 Ga. App. 163, 163 (1) (828 SE2d 398) (2019).

From the evidence presented, including that Birdsong provided the guns used in the robbery, dropped the men off near the bank so that they could rob it, waited at the Citgo knowing the robbery was taking place, and then followed the men as they

---

[2] We note that Birdsong was not charged with an attempt crime or with conspiracy.

5

fled after taking money, the jury was authorized to infer that Birdsong did not abandon the crime prior to its completion. "[A] person cannot abandon an already completed crime." (Citation omitted.) *Hubbard v. State*, 210 Ga. App. 141, 143 (1) (a) (435 SE2d 709) (1993). See generally *Spivey v. State*, 243 Ga. App. 785, 786-788 (1) - (2) (534 SE2d 498) (2000) (finding no error when trial court refused to charge jury on abandonment where, despite defendant's own conflicting testimony, some evidence showed that defendant was promised payment to drive others to and from a planned robbery, but that after parking the car, she refused to serve as getaway driver).

Further, as the jury found, the evidence outlined above was sufficient to enable a rational trier of fact to find each essential element of the crime of armed robbery, and that Birdsong was a party to that completed crime. See OCGA § 16-8-41 (a) (A person commits armed robbery "when, with intent to commit theft, he or she takes the property of another from the person or the immediate presence of another by use of an offensive weapon"); OCGA § 16-2-20 (b) (3), (4) (A person is a party to the crime if he "[i]ntentionally aids or abets in the commission of the crime; or . . . [i]ntentionally advises, encourages, hires, counsels, or procures another to commit the crime"). While there is no argument on appeal that Birdsong entered the bank,

pointed a gun at a customer or teller, and demanded money, "[a] participant to a crime may be convicted although he is not the person who directly commits the crime. . . . Mere presence at the scene is not sufficient to convict one of being a party to a crime, but criminal intent may be inferred from conduct, before, during, and after the commission of a crime." (Footnote and emphasis omitted.) *Jordan v. State*, 281 Ga. App. 419, 422 (1) (636 SE2d 151) (2006). We find no error.

*Judgment affirmed. McFadden, C. J., and McMillian, P. J., concur.*